[Nos. A120657, A121731. First Dist., Div. Four. Aug. 21, 2009.]

TAMMY CABRAL, Plaintiff and Appellant, v.
EDWARD E. MARTINS et al., Defendants and Respondents.

COUNSEL

Law Offices of Stephen G. Opperwall and Stephen G. Opperwall for Plaintiff and Appellant.

Mesirow & Fink, Steven M. Fink; Drath, Clifford, Murphy & Hagen, Ray Z. Bacerdo, Kelly M. Flanagan; Phillips, Greenberg & Hauser and Jerry R. Hauser for Defendants and Respondents.

OPINION

**RUVOLO, P. J.**—Appellant's ex-husband owes her a considerable sum in unpaid child support, for which appellant obtained a judgment against him in 1998. Since then, appellant has brought several actions against her ex-husband and his two siblings to attempt to collect on the judgment. In the present case, appellant sued not only her ex-husband and his siblings, but also several attorneys who represented the ex-husband, his siblings, and/or their mother. One of the attorneys revised the mother's estate plan in a manner that appeared to disinherit appellant's ex-husband. The others participated in probate court proceedings to effectuate the mother's revised estate plan after her death, and/or defended appellant's ex-husband and his siblings in other judicial proceedings through which appellant sought to collect her child support judgment. Appellant contends that in performing these acts, the attorneys violated a statute enacted in 2006 that authorizes treble damage awards against those who help a child support obligor avoid paying child support by assisting in the obligor's transfer or concealment of assets.

 The trial court granted the attorneys' special motion to strike under the anti-SLAPP (strategic lawsuit against public participation) statute, and awarded them attorney fees. We affirm, holding that plaintiff's cause of action is predicated on protected activity under the anti-SLAPP statute, and that plaintiff has not shown a probability of success on the merits. We also conclude that plaintiff has not demonstrated any abuse of the trial court's discretion in determining the appropriate amount of attorney fees to award.

## FACTS[1] AND PROCEDURAL BACKGROUND

Appellant Tammy Cabral is the former wife of respondent James Cabral.[2] It is undisputed that James owes Tammy a considerable sum in unpaid child support, which Tammy has reduced to a judgment but has not yet collected. James, together with his brother, respondent Joseph Cabral, and his sister, respondent Mary Soares (collectively, the Cabral family respondents), are the children of the late Edwina Cabral. In the spring of 2005, shortly before her death on June 29 of that year, Edwina hired respondent Edward E. Martins, an attorney, to assist her in modifying her estate plan from one that divided her estate equally among her three children to one that essentially disinherited James and left two-thirds of the estate to Mary and one-third to Joseph. After Edwina's death, Martins lodged her revised will with the probate court, and initiated proceedings to probate the will and to administer a related trust.

On December 19, 2005, about six months after Edwina's death, Tammy sued the Cabral family respondents, alleging various causes of action against them, including fraudulent transfer of James's share of Edwina's estate to Mary. We will refer to this proceeding as the 2005 fraudulent transfer action. In defending the 2005 fraudulent transfer action, James was represented by respondent David Biasotti, and Mary and Joseph were represented by Martins and respondent Valarie Follett. On May 2, 2006, Mary and Joseph's demurrer to Tammy's complaint was sustained in its entirety, without leave to amend. Tammy appealed from that decision and, on December 13, 2007, Division Three of this court reversed in part, holding that the trial court should have permitted Tammy to amend her complaint to plead a cause of action against Mary for constructive trust. (*Cabral v. Soares* (2007) 157 Cal.App.4th 1234 [69 Cal.Rptr.3d 242].)

While Tammy's appeal in the 2005 fraudulent transfer action was still pending, she filed a will contest and a creditor's claim in the probate proceedings relating to Edwina's estate. On January 31, 2007, Tammy also filed another, separate fraudulent transfer action against the Cabral family respondents, alleging essentially the same facts involved in the 2005 fraudulent transfer action. We will refer to this proceeding as the 2007 fraudulent transfer action. Mary and Joseph, represented as before by Martins and Follet, demurred to the 2007 fraudulent transfer action. On May 3, 2007, their

---

[1] Our narrative of the facts consists largely of facts that are either undisputed or beyond dispute, such as the procedural histories of this action and of the various related judicial proceedings. Where we recite facts alleged in pleadings, we do so only by way of summarizing the contents of the pleading; we do not thereby intend to imply anything one way or the other about the truth of those allegations.

[2] As is customary in cases involving family members who share a last name, we will refer to the nonattorney parties in this case by their first names to avoid confusion.

demurrer was sustained, and the action was stayed pending resolution of the 2005 fraudulent transfer action and the will contest in the probate proceedings. About two months later, in July 2007, respondent Michael Dougherty replaced Martins as counsel for Mary and Joseph in the probate proceedings.

The complaint in the action underlying this appeal was filed on October 9, 2007. In it, Tammy relies on essentially the same facts about James's unpaid child support and the revision of Edwina's estate plan. However, in this case Tammy has sued not only the Cabral family respondents, but also the attorneys who represented them in the other proceedings, i.e., Martins, Follett, Biasotti, and Dougherty (collectively, the attorney respondents). As the basis for her cause of action against all of the respondents, Tammy relies on the provisions of two statutes, Civil Code sections 1714.4 and 1714.41 (the child support evasion statutes), which were enacted in 2006, and became effective on January 1, 2007. The child support evasion statutes are not expressly cited in the complaint, but Tammy has never denied that her cause of action is entirely based on them.

In response to the complaint, each of the respondents (except James[3]) filed a special motion to strike under Code of Civil Procedure section 425.16 (section 425.16), which is commonly referred to as the anti-SLAPP (strategic lawsuit against public participation) statute.[4] On January 11, 2008, the trial court entered an order granting all of the motions. Tammy filed a timely appeal.

---

[3] James apparently did not enter an appearance in the trial court in this case, and is not a party to this appeal.

[4] Section 425.16 provides in relevant part: "(a) The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly. [¶] (b)(1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim. [¶] . . . [¶] (e) As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

Respondents then filed motions for attorney fees under section 425.16, subdivision (c). Again, the trial court granted the motions, and Tammy timely appealed. We consolidated the two appeals.

While the present appeals were pending, Tammy entered into a settlement, as between herself and Mary and Joseph only, of all of the proceedings described in this opinion. In accordance with the settlement, these appeals were dismissed as to Mary and Joseph. Accordingly, our opinion addresses the issues on appeal only insofar as they concern the attorney respondents.

## DISCUSSION

### A. Standard of Review of Order Granting Special Motion to Strike

■ As our colleagues in Division Two explained in *Tutor-Saliba Corp. v. Herrera* (2006) 136 Cal.App.4th 604 [39 Cal.Rptr.3d 21] (*Tutor-Saliba*): " 'Under the [anti-SLAPP] statute, the court makes a two-step determination: "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. (§ 425.16, subd. (b)(1).) 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)' [citation]. If the court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim. (§ 425.16, subd. (b)(1) . . . .)" [Citations.] "Only a cause of action that satisfies both prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." [Citation.]

" 'A ruling on a special motion to strike under section 425.16 is reviewed de novo. [Citation.] This includes whether the anti-SLAPP statute applies to the challenged claim. [Citation.] Furthermore, we apply our independent judgment to determine whether [plaintiff's] causes of action arose from acts by [defendant] in furtherance of [defendant's] right of petition or free speech in connection with a public issue. [Citation.] Assuming these two conditions are satisfied, we must then independently determine, from our review of the record as a whole, whether [plaintiff] has established a reasonable probability that [s]he would prevail on [her] claims. [Citation.]' [Citation.]" (*Tutor-Saliba, supra,* 136 Cal.App.4th at pp. 609–610, quoting *Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 645 [24 Cal.Rptr.3d 619].)

### B. Whether Cause of Action Arises from Assertedly Protected Activity

■ Following the analysis described in *Tutor-Saliba, supra,* 136 Cal.App.4th at pages 608–610, and *Thomas v. Quintero, supra,* 126 Cal.App.4th at page 645, we must first review de novo the question "whether the anti-SLAPP statute applies to the challenged claim." Answering this question involves a two-step analysis. First we must determine whether the plaintiff's cause of action actually *arose from* the assertedly protected activity, and if so, then we must answer the distinct inquiry whether the activity *was in fact* protected. This is made clear by the court's reliance on *Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921 [116 Cal.Rptr.2d 187], which held that a city's cross-complaint for unfair business practices in a contractor's suit for breach of contract was not subject to a special motion to strike under the anti-SLAPP law, because the cross-complaint did not arise from the contractor's petitioning activity in suing the city, but rather from the contractor's acts during the procurement and execution of the contract at issue.

In the present case, it is evident on the face of the complaint that the attorney respondents have correctly characterized Tammy's cause of action against them as arising from their actions in revising Edwina's estate plan, attempting to implement the revised plan through probate proceedings, and defending the Cabral family respondents in litigation initiated by Tammy. Tammy does not argue that any other activities underlie her cause of action against the attorney respondents. Accordingly, we proceed to the next step of the analysis, which is to determine whether those activities are protected under the anti-SLAPP statute.

### C. Whether Activity from Which Cause of Action Arises Is Protected

The activities by the attorney respondents from which Tammy's cause of action in this case arises can be divided into three categories: (1) Martins's revision of Edwina's estate planning documents (the will revision); (2) Martins's lodging of Edwina's will with the probate court and his initiation of proceedings to probate her estate and administer her trust (the probate proceedings); and (3) the actions of all of the attorney respondents in defending the Cabral family respondents in the various judicial proceedings initiated against them by Tammy (the litigation defense).

■ It is clear that the second and third categories—the probate proceedings and the litigation defense—were protected petitioning activity for purposes of the anti-SLAPP statute. Under the plain language of section 425.16,

subdivision (e)(1) and (2), as well as the case law interpreting those provisions, all communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected as petitioning activity by the anti-SLAPP statute. (See, e.g., *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 [39 Cal.Rptr.3d 516, 128 P.3d 713] [anti-SLAPP statute protects "communicative conduct such as the filing, funding, and prosecution of a civil action," including such acts when "committed by attorneys in representing clients in litigation"]; *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 [81 Cal.Rptr.2d 471, 969 P.2d 564] [filing a lawsuit is an exercise of one's constitutional right of petition]; *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 671–672 [35 Cal.Rptr.3d 31] [attorneys' opposition to administrative agency's efforts to appoint receiver for client was protected by anti-SLAPP statute]; *Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1087–1088 [114 Cal.Rptr.2d 825] [anti-SLAPP statute protected attorneys from malicious prosecution action against them by parties whom they had sued on behalf of a client]; cf. *Miller v. Filter* (2007) 150 Cal.App.4th 652, 660–665 [58 Cal.Rptr.3d 671] [technical defect in attorneys' authority as deputies of county district attorney did not obviate their protection under the anti-SLAPP statute for their actions in connection with their criminal prosecution of plaintiffs].)

Tammy's only argument to the contrary is that the litigation defense activity of the attorney respondents cannot be protected activity because it violated the child support evasion statutes. Even if we assume for the sake of argument that the premise of Tammy's reasoning is correct,[5] her conclusion is not supported by the case law on which she relies.

In one of these cases, *Flatley v. Mauro* (2006) 39 Cal.4th 299 [46 Cal.Rptr.3d 606, 139 P.3d 2], the California Supreme Court held that "a defendant whose assertedly protected speech or petitioning activity was illegal as a matter of law, and therefore unprotected by constitutional guarantees of free speech and petition, cannot use the anti-SLAPP statute to strike the plaintiff's complaint." The court therefore concluded that "communications [which] constituted criminal extortion as a matter of law and, as such, were unprotected by constitutional guarantees of free speech or petition," were not protected by the anti-SLAPP statute. (*Id.* at p. 305.) The court made clear, however, that its holding was limited to "the specific and extreme circumstances of this case," in which the assertedly protected communications, as a matter of law, fell outside the ambit of protected speech. (*Id.* at p. 332, fn. 16.)

---

[5] As discussed *post*, Tammy's premise is erroneous, because the attorney respondents' acts did not actually violate the child support evasion statutes.

The other case on which Tammy relies is *Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356 [102 Cal.Rptr.2d 864], disapproved on other grounds in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53 [124 Cal.Rptr.2d 507, 52 P.3d 685]. In that case, "the plaintiff was a city council member seeking reelection. Following his defeat, he filed an action against several individuals, alleging that they 'interfered with plaintiff's candidacy by influencing the election with illegal campaign contributions for one of his opponents. Plaintiff alleged that defendants' acts violated the Political Reform Act of 1974. [Citation.]' [Citation.] The defendants 'moved to strike the complaint' as a SLAPP but '[t]heir moving papers . . . show[ed] that they in fact did violate the Political Reform Act when they laundered campaign contributions to persons running for local or state offices.' [Citation.] Nonetheless, the 'defendants argued that their money laundering was "in furtherance of [their] constitutional rights of free speech" and "[arose] out of acts in furtherance of [their] constitutionally protected conduct." ' [Citation.] The plaintiff argued in his opposition that 'section 425.16 [did] not apply in this case because defendants' actions in laundering campaign money do not constitute constitutionally protected activity.' [Citation.]" (*Flatley v. Mauro, supra*, 39 Cal.4th at p. 313, describing and quoting *Paul for Council v. Hanyecz, supra*, 85 Cal.App.4th at pp. 1361–1362.) Thus, the allegedly protected actions of the defendants in *Paul for Council v. Hanyecz* were admittedly illegal, under the provisions of a statutory scheme specifically aimed at confining otherwise protected political activity within constitutionally valid bounds. (See *Flatley v. Mauro, supra*, 39 Cal.4th at pp. 314–315.)

In the present case, however, the attorney respondents' actions in the course of the probate proceedings and the litigation defense were neither inherently criminal nor otherwise outside the scope of normal, routine legal services. Even if the attorney respondents' actions had the effect of defeating or forestalling Tammy's ability to execute her judgment for child support, thereby (according to Tammy) violating the child support evasion statutes, this is not the kind of illegality involved in *Flatley v. Mauro, supra*, 39 Cal.4th 299, and *Paul for Council v. Hanyecz, supra*, 85 Cal.App.4th 1356.[6]

---

[6] The other cases on which Tammy relies in this connection require little discussion, as they are clearly distinguishable. In *Novartis Vaccines & Diagnostics, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2006) 143 Cal.App.4th 1284 [50 Cal.Rptr.3d 27], the court held that an activist campaign involving "terrifying incidents in which persons broke [the plaintiff's] employees' windows, vandalized their cars, set off ear-piercing alarms in their yards, and left excrement on their doorsteps" (*id.* at p. 1288) did not arise out of activity that was protected under the "speech about matters of public interest" prong of the anti-SLAPP statute. In *Lam v. Ngo* (2001) 91 Cal.App.4th 832 [111 Cal.Rptr.2d 582], the court held that the organizer of peaceful political demonstrations was entitled to have his special motion to strike granted in a tort action against him by the owner of the targeted business, but that individual participants in the demonstrations who engaged in violent activity would not be entitled to the protection of the anti-SLAPP statute. Obviously, these cases do not support Tammy's argument that core

■ As our colleagues in Division Three stated in *Birkner v. Lam* (2007) 156 Cal.App.4th 275 [67 Cal.Rptr.3d 190], " '[c]onduct that would otherwise come within the scope of the anti-SLAPP statute does not lose its coverage . . . simply because it is alleged to have been unlawful or unethical.' [Citations.] An exception to the use of section 425.16 applies only if a 'defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law.' [Citation.] The exception does not apply here." (*Id.* at p. 285, italics omitted; see also *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 285 [46 Cal.Rptr.3d 638, 139 P.3d 30] ["if a defendant's assertedly protected constitutional activity is alleged to have been illegal and, therefore, outside the ambit of the anti-SLAPP statute, the illegality must be established as a matter of law either through the defendant's concession or because the illegality is conclusively established by the evidence presented in connection with the motion to strike"].) The exception noted by the *Birkner* court does not apply here.

If we were to hold otherwise, it would mean that actions by attorneys in defending their clients against disputed claims for child support that later proved to be valid would never be protected under the anti-SLAPP law. Accordingly, we are not persuaded by Tammy's argument for excluding the probate proceedings and the litigation defense from the ambit of protected petitioning activities.

■ That brings us to the third category of activities by the attorney respondents, i.e., the will revision, which actually involved only Martins. Case law establishes that communications that are intimately intertwined with, and preparatory to, the filing of judicial proceedings qualify as petitioning activity for the purpose of the anti-SLAPP statute. (See *Briggs v. Eden Council for Hope & Opportunity, supra,* 19 Cal.4th at p. 1115 [statements made in connection with or in preparation for litigation are protected activity within the meaning of § 425.16]; *Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1285 [74 Cal.Rptr.3d 873] [notice of rescission of contract given as prerequisite to litigation was protected communication under § 425.16]; *Birkner v. Lam, supra,* 156 Cal.App.4th at p. 282 [notice terminating tenancy is protected under § 425.16 because it is prerequisite to unlawful detainer action]; *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 784 [54 Cal.Rptr.2d 830] [communications preparatory to or in anticipation of bringing action or other official proceeding are protected by anti-SLAPP statute].)

petitioning activities such as filing probate proceedings and defending lawsuits fall outside the protection of the anti-SLAPP statute merely because they interfere with efforts to collect child support.

In the present case, the will revision was of no effect in and of itself, but only insofar as it was later implemented through the probate proceedings. Accordingly, the will revision was also protected activity under the anti-SLAPP statute. Even if not, it was only incidental to the subsequent protected activity, thus rendering Tammy's entire cause of action subject to a special motion to strike. (See, e.g., *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP, supra,* 133 Cal.App.4th at pp. 672–673.)

### D. Whether Probability of Prevailing on Merits Has Been Established

Because, as we have concluded, the acts of the respondent attorneys were protected activities within the contemplation of the anti-SLAPP law, Tammy bears the burden of establishing a probability that she will prevail on her cause of action against them. (*Soukup v. Law Offices of Herbert Hafif, supra,* 39 Cal.4th at p. 291; *Zamos v. Stroud* (2004) 32 Cal.4th 958, 965 [12 Cal.Rptr.3d 54, 87 P.3d 802].) Whether or not she has succeeded in doing so is a question of law, which we examine de novo. (*Soukup,* at p. 291; *Zamos,* at p. 965.)

■ The attorney respondents assert several grounds for arguing that, as a matter of law, Tammy cannot succeed on her cause of action against them. The first is that the attorneys' actions in revising, effectuating, and defending Edwina's estate plan did not violate the child support evasion statutes. These statutes apply against anyone who "knowingly assist[s] a child support obligor . . . [by] helping to hide or transfer *assets of the child support obligor.*" (Civ. Code, § 1714.4, subd. (b), italics added.) The attorney respondents contend that the statutes were inapplicable, because James's expectation that he would inherit one-third of Edwina's estate upon her death did not constitute a property right, or asset, that belonged to James.

This argument finds some support in *Cabral v. Soares, supra,* 157 Cal.App.4th at page 1240, in which our colleagues in Division Three noted that even "assuming the truth of [Tammy's allegation that Edwina and Mary agreed to transfer James's share of Edwina's estate to Mary in order to avoid the payment of child support], there was no fraudulent conveyance as alleged in [Tammy's] cause of action [for fraudulent conveyance]. While his mother still lived, James had no right to any of her property. His mother was under no obligation to leave any of it to him, and she was under no obligation to plaintiff. Thus, the home and other property that Edwina owned while she was living was not the 'property of a debtor' within the meaning of Civil Code section 3439.01, subdivision (a), and Edwina's decision to leave none of it to James was not a fraudulent transfer within the meaning of Civil Code section 3439.04. Edwina was entitled to remove James as a devisee under her will

if she did not wish to leave him property that plaintiff would be able to recover. She also had the right to increase her bequest to Mary. [Citation.]" (Fn. omitted.)

In short, *Cabral v. Soares, supra*, 157 Cal.App.4th 1234, implies (and we agree) that James's expectancy as a probable heir of Edwina's estate was not an "asset" belonging to James. Therefore, if Tammy's complaint alleged only that the attorney respondents revised Edwina's estate plan in order to carry out Edwina's wish to disinherit James, and then took action to effectuate and defend that plan, we would find no reasonable possibility of success as to Tammy's cause of action under the child support evasion statutes. But, as the court anticipated in *Cabral v. Soares, supra*, 157 Cal.App.4th at pages 1241–1243, Tammy also alleges that Edwina did not actually wish to disinherit James, but agreed with Mary that she would revise her estate plan so as to *appear* to give James's share of the estate to Mary, on condition that Mary would, in turn, turn that money over to James in some fashion designed to prevent Tammy from enforcing the child support judgment against James's inheritance.

Thus, *Cabral v. Soares* held that James's expectation of an inheritance from Edwina was not in and of itself a property right, but it also held that if Tammy could establish the existence of the alleged agreement between Mary and Edwina that Mary would hold part of the estate bequeathed to her in constructive trust for James, then Tammy, as James's creditor, would be entitled to enforce the constructive trust against Mary. (*Cabral v. Soares, supra*, 157 Cal.App.4th at pp. 1243–1244.) For the same reason, it is at least arguable that in the present case, Tammy could state a claim against the attorney respondents under the child support evasion statutes on the theory that in defending Mary against Tammy's claims, they assisted Mary and James in hiding or transferring an "asset" of James's, to wit, the money from Edwina's estate that Mary agreed to hold in constructive trust for James.

■ Such a claim would be subject to two dispositive defenses, however. (See *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP, supra*, 133 Cal.App.4th at p. 676 [if defendant establishes that plaintiff's causes of action are subject to valid defenses, plaintiff does not establish probability of success on merits required to defeat special motion to strike under anti-SLAPP statute].) First, as to Martins's actions in revising Edwina's estate plan, these all occurred prior to Edwina's death in 2005. The child support evasion statutes were not enacted until over a year later, and did not become effective until January 1, 2007. ■ Under California law, statutes do not apply retroactively unless a clear intent to make them retroactive clearly appears either on the face of the enactment or from its legislative history or the circumstances of its enactment. (Civ. Code, § 3; *Strauss v.*

*Horton* (2009) 46 Cal.4th 364, 470–472 [93 Cal.Rptr.3d 591, 207 P.3d 48]; *Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 840–841 [123 Cal.Rptr.2d 40, 50 P.3d 751].) Tammy has not pointed to any such clear statement of intent in the language or legislative history of the child support evasion statutes, and our own research has found none. Accordingly, even if Tammy's allegations as to Martins's state of knowledge and intent could be proven (an issue we need not and do not decide), she still could not prevail on a claim against Martins under the child support evasion statutes based on his involvement in the 2005 will revision.

 Second, as to the attorney respondents' subsequent actions in the probate proceedings and the litigation defense, these are all absolutely protected by the litigation privilege under Civil Code section 47, subdivision (b) (the section 47(b) privilege). The section 47(b) privilege precludes civil liability, except for malicious prosecution, for "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]" (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 [266 Cal.Rptr. 638, 786 P.2d 365].) "This privilege is absolute in nature, applying 'to all publications, irrespective of their maliciousness.' [Citation.] . . . The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.' [Citation.]" (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241 [63 Cal.Rptr.3d 398, 163 P.3d 89]; see also *Wise v. Thrifty Payless, Inc.* (2000) 83 Cal.App.4th 1296, 1302 [100 Cal.Rptr.2d 437] [because litigation privilege is absolute, it applies regardless of existence of malice or intent to harm].) The privilege applies to communications relative to the defense of an action as well as those relative to its filing and prosecution. (*California Physicians' Service v. Superior Court* (1992) 9 Cal.App.4th 1321, 1330 [12 Cal.Rptr.2d 95] ["Defensive pleading, including the assertion of affirmative defenses, is communication protected by the absolute litigation privilege. Such pleading, even though allegedly false, interposed in bad faith, or even asserted for inappropriate purposes, cannot be used as the basis for allegations of ongoing bad faith. No complaint can be grounded upon such pleading."].) It applies even if the communication involved forgery or falsification of documents, such as the presentation for probate of a forged will. (*Steiner v. Eikerling* (1986) 181 Cal.App.3d 639, 642–643 [226 Cal.Rptr. 694].)

In her reply brief, in opposition to these principles, Tammy discusses two unpublished federal district court opinions, decided after the completion of her opening brief: *Sial v. Unifund CCR Partners* (S.D.Cal., Aug. 28, 2008, No. 08-CV-0905-JM (CAB)) 2008 U.S.Dist. Lexis 66666 (*Sial*), and *Cassady v. Union Adjustment Co.* (N.D.Cal., Oct. 27, 2008, No. C-07-5405-SI)

2008 U.S.Dist. Lexis 90700 (*Cassady*). At oral argument, Tammy also relied on an opinion issued by Division One of this district after the completion of briefing in this case, *Komarova v. National Credit Acceptance, Inc.* (2009) 175 Cal.App.4th 324 [95 Cal.Rptr.3d 880] (*Komarova*). Tammy contends that under these cases, the section 47(b) privilege does not apply to acts that violate a specific statute, as the attorney respondents' actions here are alleged to have done. We find all of these cases inapposite.

In *Sial, supra,* 2008 U.S.Dist. Lexis 66666, the plaintiff had been sued (unsuccessfully) in state court by the defendant collection agency, represented by the defendant law firm, to collect the balance due on a used car loan. The plaintiff alleged that the defendants' communications with her prior to the filing of the litigation violated the federal Fair Debt Collection Practices Act (FDCPA) (15 U.S.C. § 1692 et seq.) and California's Rosenthal Fair Debt Collection Practices Act (Rosenthal Act) (Civ. Code, § 1788 et seq.). The defendants moved to dismiss, arguing that as a matter of law, their debt collection activities were immune from FDCPA liability under the *Noerr-Pennington* doctrine,[7] and from Rosenthal Act liability under the section 47(b) privilege.

The trial court denied the motion. With respect to the *Noerr-Pennington* doctrine, the court held, in light of *Heintz v. Jenkins* (1995) 514 U.S. 291 [131 L.Ed.2d 395, 115 S.Ct. 1489], that the FDCPA evidenced an intent to create an exception to the doctrine for litigation activities related to debt collection. (*Sial, supra,* 2008 U.S.Dist. Lexis 66666 at pp. *9–*14.) With respect to the Rosenthal Act, the *Sial* court acknowledged a split in federal district court authority regarding the application of the section 47(b) privilege. It concluded that the better rule was that because the two statutes were irreconcilable, and application of the section 47(b) privilege would entirely vitiate the Rosenthal Act, the principle that a specific statute prevails over a general one had to be applied. Accordingly, it held that privilege did not apply to causes of action under the Rosenthal Act. (*Sial, supra,* 2008 U.S.Dist. Lexis 66666 at pp. *14–*15.)

Similarly, *Cassady, supra,* 2008 U.S.Dist. Lexis 90700, involved a lawsuit against a debt collector for violations of the FDCPA and the Rosenthal Act. The defendant filed a motion for summary judgment, arguing that the FDCPA claim was barred by the *Noerr-Pennington* doctrine, and that the

---

[7] The *Noerr-Pennington* doctrine (named for *Eastern R. Conf. v. Noerr Motors* (1961) 365 U.S. 127 [5 L.Ed.2d 464, 81 S.Ct. 523] and *Mine Workers v. Pennington* (1965) 381 U.S. 657 [14 L.Ed.2d 626, 85 S.Ct. 1585]) precludes basing statutory liability on activities protected by the First Amendment's petition clause, unless those activities are a sham, and requires courts to "construe federal statutes so as to avoid burdening conduct that implicates the protections afforded by the [p]etition [c]lause unless the statute clearly provides otherwise." (*Sosa v. DirecTV* (9th Cir. 2006) 437 F.3d 923, 931, fn. omitted; see generally *id.* at pp. 929–938.)

Rosenthal Act claim was barred by the section 47(b) privilege. On the *Noerr-Pennington* issue, *Cassady* followed *Sial*. (2008 U.S.Dist. Lexis 90700 at pp. *19–*20.) On the Rosenthal Act issue, however, *Cassady* noted that unlike the FDCPA, the Rosenthal Act expressly exempts lawyers from liability. Because the court had already narrowed the plaintiff's claims by granting portions of the defendant's summary judgment motion on the merits, the sole remaining factual basis for the claim was premised exclusively on the collection agency's effort to collect the plaintiff's debt through judicial proceedings. Because "the application of the litigation privilege to . . . communication [within judicial proceedings] would not render the Rosenthal Act meaningless," the court differed with *Sial*, and held that the section 47(b) privilege does immunize communications that would otherwise constitute violations of the Rosenthal Act. (2008 U.S.Dist. Lexis 90700 at pp. *20–*21.)

*Komarova, supra,* 175 Cal.App.4th 324, also involved alleged violations of the Rosenthal Act by a debt collection agency. The plaintiff was not the person who owed the debt, but had a remarkably similar name, and the debt collection agency continued to attempt to collect the debt from her even after she established that she was not the debtor. A jury awarded damages after a jury trial, based on the defendant debt collection agency's conduct in calling the plaintiff without disclosing its identity; making unreasonably frequent, harassing communications; communicating with the plaintiff's employer; and bringing judicial proceedings without effecting service of process on the plaintiff.

Our colleagues in Division One held that these activities were not protected by the section 47(b) privilege. (*Komarova, supra,* 175 Cal.App.4th at pp. 337–343.) In so holding, the court relied on the reasoning in *Sial, supra,* 2008 U.S.Dist. Lexis 66666; *Cassady, supra,* 2008 U.S.Dist. Lexis 90700; and similar cases, particularly *Oei v. N. Star Capital Acquisitions, LLC* (C.D.Cal. 2006) 486 F.Supp.2d 1089. (*Komarova, supra,* at pp. 337–340.) The *Komarova* court noted that "application of the [section 47(b)] privilege would negate plaintiff's Rosenthal Act claims. The privilege would protect defendant's prosecution of judicial proceedings—the arbitration and subsequent petition to confirm the arbitration award—to collect the alleged debt, when it knew that service of process in the arbitration had not been effected"—conduct expressly prohibited by a specific provision of the Rosenthal Act. (*Komarova,* at pp. 338–339, discussing Civ. Code, § 1788.15, subd. (a).) Indeed, the court noted that "The [section 47(b)] privilege will inevitably conflict with claims under" that provision of the Rosenthal Act. (*Komarova,* at p. 339.)

Similarly, the *Komarova* court reasoned that the defendant's telephone calls to the plaintiff and her employer, which the jury had found violated other

provisions of the Rosenthal Act, were communications in contemplation of judicial proceedings, and thus would not be actionable if the section 47(b) privilege applied. Thus, the court concluded, " 'the litigation privilege and the Rosenthal Act cannot be reconciled in the context of this case.' [Citation.]" (*Komarova, supra*, 175 Cal.App.4th at p. 339.) Noting "that the Legislature specifically prohibited certain litigation related activity when it passed the Rosenthal Act in 1977," the court concluded that the Legislature was "presumably aware of the extant broad litigation privilege in section 47." (*Id.* at pp. 339–340.)

Finally, the court noted "the ease with which the [Rosenthal] Act could be circumvented if the litigation privilege applied. In that event, unfair debt collection practices could be immunized merely by filing suit on the debt." (*Komarova, supra*, 175 Cal.App.4th at p. 340.) Concluding that "the [Rosenthal] Act would be significantly inoperable if it did not prevail over the [section 47(b)] privilege where, as here, the two conflict," *Komarova* held that the Rosenthal Act prevails over the more general section 47(b) privilege, so that conduct in violation of the Rosenthal Act remains actionable even if it is litigation activity that would otherwise be immunized by Civil Code section 47, subdivision (b). (175 Cal.App.4th at p. 340.)

■ In the present case, the question is whether the section 47(b) privilege immunizes communications in the course of judicial proceedings that would otherwise arguably violate the child support evasion statutes. As the methodology employed by the *Sial, Cassady*, and *Komarova* courts implies, the answer to this question is to be determined by examining whether application of the section 47(b) privilege would vitiate the child support evasion statutes to such an extent as to render the latter meaningless. (See also *Action Apartment Assn., Inc. v. City of Santa Monica, supra*, 41 Cal.4th at pp. 1246–1247 [exceptions to § 47(b) privilege are found only when "based on irreconcilable conflicts between the privilege and other coequal state laws"].) We are not persuaded by Tammy's argument that this is the case.

The language of the child support evasion statutes demonstrates that they are aimed at such targets as employers who hire child support obligors without reporting their employment to the appropriate government authorities (Civ. Code, § 1714.41, subd. (b)(1)); individuals who procure goods or services from child support obligors by means of untraceable barter or cash transactions (Civ. Code, § 1714.41, subd. (b)(2), (3)); and persons such as friends, relatives, and notaries public who assist child support obligors in attempting to conceal their assets by transferring legal title to them (Civ. Code, § 1714.4, subd. (b)).

Indeed, the final Assembly report on the bill that enacted the child support evasion statutes indicates that the Legislature's primary focus was on the

"underground economy," i.e., income from employment that is not reported to the appropriate government authorities. (See Concurrence in Sen. Amends., Assem. Bill No. 2440 (2005–2006 Reg. Sess.) as amended Aug. 14, 2006 <http://www.legininfo.ca.gov/pub/05-06/bill/asm/ab_2401-2450/ab_2440_cfa_20060822_201535_asm_floor.html> [as of Aug. 21, 2009].) Similarly, the final Senate Floor analysis of the bill stated that: " 'The purpose of AB 2440 is to encourage individuals and businesses to not engage in the underground economy while getting thousands of children and parents the child support money that these families are owed.' " (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 2440 (2005–2006 Reg. Sess.) as amended Aug. 8, 2006, p. 3 <http://www.legininfo.ca.gov/pub/05-06/bill/asm/ab_2401-2450/ab_2440_cfa_20060808_110118_sen_floor.html> [as of Aug. 21, 2009].)

 None of these types of wrongdoing would be immunized by a holding that the section 47(b) privilege provides a defense to actions under the child support evasion statutes. Accordingly, the two statutes are not irreconcilable, and application of the section 47(b) privilege does not make the child support evasion statutes "significantly inoperable." (*Komarova, supra,* 175 Cal.App.4th at p. 340.) Tammy therefore has not persuaded us that the child support evasion statutes must be construed to create an exception to section 47(b).

Moreover, to interpret the child support evasion statutes in the way Tammy urges, as applied to the attorney respondents, would entail exposing to treble damages liability any attorney who drafts or revises the estate plan of a child support obligor's relative, or who defends a child support obligor, or anyone holding assets to which the obligor has a claim, in a collection action by the child support obligee. As a practical matter, such an interpretation would tend to deter attorneys from representing child support obligors and those associated with them, thereby impairing the latter's access to legal representation. Tammy points to no indication in the statutes' legislative history that such an extreme result was intended by the statutes' authors, and we have found none. To read the statute in the manner Tammy suggests would cause it to conflict with California's strong public policy favoring parity between the parties in access to legal representation in family law matters (see, e.g., *Droeger v. Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 41, fn. 12 [283 Cal.Rptr. 584, 812 P.2d 931]; *Alan S. v. Superior Court* (2009) 172 Cal.App.4th 238, 251–252 [91 Cal.Rptr.3d 241]; *In re Marriage of Keech* (1999) 75 Cal.App.4th 860, 866 [89 Cal.Rptr.2d 525]), and possibly with the due process clause of the California Constitution (Cal. Const., art. I, § 7; see, e.g., *Oliveros v. County of Los Angeles* (2004) 120 Cal.App.4th 1389, 1398 [16 Cal.Rptr.3d 638]; *Roa v. Lodi Medical Group, Inc.* (1985) 37 Cal.3d 920, 925–926 [211 Cal.Rptr. 77, 695 P.2d 164]; cf. *Powell v. Alabama* (1932)

287 U.S. 45, 68–69 [77 L.Ed. 158, 53 S.Ct. 55] [due process right to counsel under federal Constitution]).

For all of the foregoing reasons, we agree with the trial court's conclusion that Tammy has not "established a reasonable probability that [s]he would prevail on [her] claims" on the merits. (*Tutor-Saliba, supra,* 136 Cal.App.4th at p. 610.)[8] Accordingly, we affirm the order granting the attorney respondents' special motions to strike.

### E. Attorney Fee Awards

Subdivision (c) of Code of Civil Procedure section 425.16 provides that "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." In the present case, the trial court awarded $30,000 as attorney fees to respondents Dougherty, Follett, Mary, and Joseph, consisting of 75 hours at $400 per hour; $14,000 as attorney fees to respondent Martins, consisting of 70 hours at $200 per hour; and $14,600 as attorney fees to respondent Biasotti, consisting of three hours at $200 per hour for one attorney and 80 hours at $175 per hour for another attorney. In each instance, the court expressly found that the hours expended and the hourly rate were reasonable for an attorney with the experience of the counsel for whose services the fees were awarded.

On appeal, Tammy makes three arguments for reversal of the fee awards. First, she argues that the awards should be reversed in their entirety if the order granting the special motions to strike is reversed. This argument is mooted by our affirmance of the order.

Second, Tammy argues that the awards should be reduced due to her good faith in bringing claims under a new statute that has not yet been judicially interpreted.[9] She cites no case law in support of this contention, and in fact, the case law is to the contrary. The language of the anti-SLAPP statute is mandatory; it requires a fee award to a defendant who brings a successful motion to strike. Accordingly, our Supreme Court has held that under this provision, "any SLAPP defendant who brings a successful motion to strike is *entitled* to *mandatory* attorney fees." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131 [104 Cal.Rptr.2d 377, 17 P.3d 735], italics added.) Accordingly, we decline to consider this argument further.

---

[8] Because the stated grounds provide a sufficient basis for affirming the trial court's order granting the attorney respondents' special motions to strike, we need not and do not discuss or decide the other issues raised by the parties on appeal.

[9] The parties have not cited any published opinions interpreting the child support evasion statutes, and our research has not revealed any.

 Finally, Tammy argues that the amount of fees awarded is excessive. She points out, correctly, that a defendant who brings a successful special motion to strike is entitled only to reasonable attorney fees, and not necessarily to the entire amount requested. (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1321 [81 Cal.Rptr.3d 866] (*Christian Research*); see also *Maughan v. Google Technology, Inc.* (2006) 143 Cal.App.4th 1242, 1248–1253 [49 Cal.Rptr.3d 861] (*Maughan*).) Accordingly, we will address this issue on its merits.

### 1. *Methodology and Standard of Review*

The amount of an attorney fee award under the anti-SLAPP statute is computed by the trial court in accordance with the familiar "lodestar" method. (*Ketchum v. Moses, supra,* 24 Cal.4th at pp. 1135–1136.) Under that method, the court "tabulates the attorney fee touchstone, or lodestar, by multiplying the number of hours reasonably expended by the reasonable hourly rate prevailing in the community for similar work. [Citations.]" (*Christian Research, supra,* 165 Cal.App.4th at p. 1321.)[10] In the present case, the trial court's fee award orders show on their face that this method was the one the court used in calculating the awards.

In reviewing the trial court's application of this method to the circumstances of a specific case, we apply the abuse of discretion standard. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 [95 Cal.Rptr.2d 198, 997 P.2d 511].) " 'The "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong" [']—meaning that it abused its discretion. [Citations.]" (*Ibid.*) This rule applies in the context of fee awards under the anti-SLAPP statutes just as it does in the context of similar statutory fee-shifting provisions. (See *Ketchum v. Moses, supra,* 24 Cal.4th at p. 1140; *Maughan, supra,* 143 Cal.App.4th at p. 1249.)

### 2. *Merits*

Tammy's challenge to the amount of the fee awards is not based on any specific facts regarding the reasonableness of the number of hours expended by the attorney respondents' counsel, or on the reasonableness of their hourly rates. Instead, she relies on the fact that in *Maughan, supra,* 143 Cal.App.4th 1242, the court awarded only $23,000 out of the $112,288.63 fee amount requested, on the basis of its finding that the anti-SLAPP motion in that case should only have required 50 hours to prepare.

---

[10] The trial court here did not apply any multiplier or other enhancement to the lodestar amounts requested by respondents' counsel.

What Tammy fails to note is that in *Maughan*, it was the *trial* court which made this determination, and which the Court of Appeal then affirmed, finding that the trial court had not abused its discretion. (*Maughan, supra,* 143 Cal.App.4th at pp. 1249–1251.) Here, the trial court, applying the correct methodology, made a different determination as to the lodestar amount. Tammy has not presented us with any reasoned argument why that determination constituted an abuse of discretion.

Tammy also argues that the award is excessive because the respondents were represented by three separate law firms that made essentially the same arguments. Again, however, she has made no effort to demonstrate that the trial court abused its discretion in determining (implicitly) that this was reasonable under the circumstances of this case. Accordingly, her challenge to the amount of the fee awards is without merit. (See *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 560–563 [77 Cal.Rptr.3d 695].)

## DISPOSITION

The order granting the attorney respondents' special motions to strike, and the order awarding them attorney fees, are affirmed. The attorney respondents are awarded their attorney fees and costs on appeal, and the case is remanded to the trial court for a determination as to the appropriate amount of such attorney fees.

Reardon, J., and Sepulveda, J., concurred.

A petition for a rehearing was denied September 17, 2009, and appellant's petition for review by the Supreme Court was deneid December 17, 2009, S177113.