Filed 8/8/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

|  |  |
|---|---|
| ADRIANA RAMIREZ et al., | B340986 |
| Plaintiffs and Respondents, | Los Angeles County |
| v. | Super. Ct. No. 23STCV28036 |
| SANDRA KUHN McCORMACK et al., |  |
| Defendants and Appellants. |  |

APPEAL from an order of the Superior Court of Los Angeles County, Cherol Nellon, Judge.  Reversed and remanded.

Klinedinst, Gregory A. Garbacz and Robert M. Shaughnessy for Defendants and Appellants.

Shiloh A. Parker for Plaintiffs and Respondents.

_____

If you are a party in litigation, your tactic of suing opposing *counsel* is apt to trigger swift retaliation:  an anti-SLAPP motion. If opposing counsel are helping their clients petition for legal

relief, your motion may fall within anti-SLAPP's prong one as an attack on petitioning activity. If so, then prong two will require you to produce evidence your claims have minimal merit. If you cannot show minimal merit, you may have to pay your opponent for the trouble you have caused.

This case fits this pattern.

Adriana Ramirez was engaged in litigation with third parties. Ramirez sued opposing counsel: attorney Sandra McCormack and her law firm. Defendant McCormack responded with the predictable anti-SLAPP motion. In opposition, plaintiff Ramirez offered only an argumentative declaration by her attorney and no actual evidence. In this court Ramirez forfeits her opportunity to argue the merits, so McCormack's motion wins the day. We reverse the trial court's denial of McCormack's anti-SLAPP motion and remand for a calculation of the fees and costs Ramirez must pay.

Statutory citations are to the Code of Civil Procedure.

I

We refer to Ramirez and two members of her family collectively as Ramirez.

Ramirez sued attorney Sandra McCormack and others, including McCormack's law firm.

Ramirez filed an unverified complaint in November 2023. This complaint alleged that McCormack and other counsel represented third parties with whom Ramirez had settled, and that McCormack and these opposing counsel "demanded to send the settlement checks" to *Ramirez's attorney's office address* instead of to an address specified on a W-9 form Ramirez provided. As a result of this *mailing address dispute*, Ramirez claimed she suffered tortious interference with contract and "in excess of $400,000.00" in damages.

Ramirez's complaint did not explain how an address dispute could cause injury.

In May 2024, Ramirez filed an unverified first amended complaint. Ramirez attached 17 exhibits to this complaint, comprising over 60 pages. With exhibits, this operative pleading is over 100 pages long.

In a nutshell, this complaint alleged McCormack, as counsel to Ramirez's litigation opponents, had advised her clients to refuse to follow through on a settlement with Ramirez.

In more detail, Ramirez alleged as follows.

Third party Harvey Miller owned Stockdale Villa Mobile Home Park. Ramirez lived and worked there as a property manager. Ramirez sued Miller and Stockdale on employment claims. Miller hired attorney McCormack to bring an unlawful detainer action against Ramirez.

Ramirez retained attorney Shiloh Parker to fight the unlawful detainer. Parker told McCormack to email documents to Parker, but McCormack hired process servers to serve Ramirez at home. The process servers harassed Ramirez. Parker reported McCormack to the State Bar, which investigated McCormack.

Miller hired the law firm of Gordon Rees Scully Mansukani LLP to defend against Ramirez's employment action. McCormack is not a member of the Gordon Rees law firm, but coordinated with Gordon Rees lawyers so as to "distract" Ramirez "with the possibility of a global settlement early in the employment matter."

The Gordon Rees lawyers made misrepresentations to Ramirez as to whether they had authority to waive service of Ramirez's employment claims. The Gordon Rees lawyers conditioned settlement of Ramirez's employment case on Parker withdrawing the State Bar complaint against McCormack.

3

The Gordon Rees lawyers worked with McCormack to draft and edit a proposed global settlement agreement that would resolve all litigation between Ramirez on one hand and Miller and Stockdale on the other.

The parties agreed Miller and Stockdale would seal and dismiss the unlawful detainer against Ramirez. The Gordon Rees lawyers and McCormack worked together to write a stipulation to accomplish this goal. The Gordon Rees lawyers and McCormack realized Ramirez would not be able to obtain employment as a property manager were the unlawful detainer unsealed, so this provision was a key term of the settlement.

The Gordon Rees lawyers refused to mail the settlement check to an address that Parker specified, but instead mailed it to Parker's law firm address.

The amended complaint did not explain how this address dispute could cause injury.

Ramirez's amended complaint also alleged she dismissed her lawsuit against Stockdale and Miller, but they did not dismiss or seal their unlawful detainer against Ramirez, as the settlement required. McCormack and the Gordon Rees lawyers obstructed and delayed the sealing of the unlawful detainer lawsuit.

Based on these factual allegations, Ramirez brought claims against McCormack and the Gordon Rees lawyers for interference with contractual and noncontractual relations, interference with prospective relations, inducement to breach contract, civil conspiracy, and unfair business practices.

McCormack filed an anti-SLAPP motion that led with this first substantive paragraph, to which we add bold font:

"Even if Plaintiff's allegations were true (they are not) '**the plaintiff [Ramirez] is a nonclient who alleges causes of action against someone else's lawyer based on that lawyer's**

4

**representation of other parties, the anti-SLAPP statute is applicable to bar such nonmeritorious claims."** (*Thayer v. Kabateck Brown Kellner LLP* (2012) 207 Cal.App.4th 141, 158 [(*Thayer*)].) There 'is no question that communications sent in anticipation of litigation or as part of ongoing litigation constitute legitimate speech or petitioning activity protected under the anti-SLAPP statute.' (*Geragos v. Abelyan* (2023) 88 Cal.App.5th 1005, 1023 [citing *Cabral v. Martins* (2009) 177 Cal.App.4th 471, 480]."

Shortly, we will return to the *Thayer* decision.

McCormack appended to her motion her own declaration describing her personal knowledge of the actions Ramirez was challenging.

Ramirez opposed McCormack's anti-SLAPP motion. This opposition responded to *Thayer* in a four-sentence argument. This argument was that *Thayer* did not apply because Ramirez had dismissed her complaint *before* McCormack's tortious conduct. Her dismissal concluded her lawsuit, Ramirez claimed, and McCormack's *later* alleged misconduct fell outside of *Thayer*'s compass.

Ramirez supported her opposition with an argumentative two-page declaration by her attorney Parker. This declaration asserted McCormack did not dismiss the unlawful detainer suit until after the settlement deadline had passed. Parker's declaration argued McCormack had "not taken all reasonable steps to seal the unlawful detainer as of the date of this opposition."

Parker's declaration did not explain how an address dispute could cause injury.

Ramirez offered no other evidence.

McCormack's reply reiterated the authority of *Thayer* and its holding that claims against adverse litigation counsel were within prong one of the anti-SLAPP statute.

McCormack pointed out Ramirez had not served any defendant other than McCormack with her suit, and that Ramirez's opposition failed to offer evidence showing her claims had minimal merit.

In August 2024, the trial court denied McCormack's motion.

The trial court's ruling centrally relied on two precedents.

The first precedent was *Applied Business Software, Inc. v. Pacific Mortgage Exchange, Inc.* (2008) 164 Cal.App.4th 1108, 1117 (*Applied*), which held there was no petitioning activity when a defendant company allegedly breached a settlement agreement by refusing to supply a proper business certification and by continuing to use software it had promised to abandon. (*Ibid.*) In *Applied*, the defendant Pacific Mortgage Exchange, Inc. was not a lawyer or a law firm.

The second precedent was *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995 (*Bonni*). In *Bonni*, hospitals worried their surgeon Bonni did poor work, so they revoked Bonni's staff privileges. (*Id.* at p. 1005.) Bonni sued the hospitals, claiming they were retaliating because he had raised patient safety concerns. The trial court granted the hospitals' anti-SLAPP motion. The California Supreme Court held the anti-SLAPP statute protected statements made during and in connection with the hospitals' peer review proceedings, as well as disciplinary reports filed with official bodies. (*Id.* at p. 1004.) The discipline the hospitals imposed on Bonni, however, was *not* protected activity. (*Ibid.*)

The *Bonni* case stated that a breach of contract claim "can arise from protected activity if the action allegedly breaching the

6

contract is itself protected." (*Bonni, supra,* 11 Cal.5th at p. 1025.) The high court cited *Applied* and included this parenthetical description of its holding: "breach of settlement claim did not arise from protected activity where acts constituting breach not exercise of speech or petitioning rights." (*Bonni, supra,* 11 Cal.5th at pp. 1025–1026.)

As was true in the *Applied* case, the defendant hospitals in *Bonni* were not lawyers or law firms.

In a notable omission, the trial court did not cite or refer to *Thayer*. As in this case, the moving defendants in *Thayer* were a lawyer and his law firm. (*Thayer, supra*, 207 Cal.App.4th at p. 145.)

## II

Contrary to the trial court ruling, McCormack's anti-SLAPP motion was valid. The motion satisfied prong one because Ramirez's suit attacked McCormack's legal representation of clients in their efforts to petition the courts. McCormack prevails on prong two because, in this appeal, Ramirez has forfeited her opposition on this score.

## A

The anti-SLAPP statute enables courts, early in litigation, to strike meritless claims that threaten the right to petition. There are two inquiries when a defendant seeks to strike a plaintiff's claim under the statute. "First, does the claim call for the anti-SLAPP statute's protections? Second, if so, does it have sufficient merit?" (*Serova v. Sony Music Entertainment* (2022) 13 Cal.5th 859, 871 (*Serova*).)

By convention, these two anti-SLAPP inquiries are called prong one and prong two. Prong one requires the defendant to show the anti-SLAPP statute applies. Prong two shifts the burden

7

to the plaintiff to show the challenged claims have minimal merit. (See *Serova, supra*, 13 Cal.5th at p. 872.)

We independently review orders deciding anti-SLAPP motions. (*Park v. Bd. of Trustees of Cal. State U.* (2017) 2 Cal.5th 1057, 1067.)

B

McCormack prevails on prong one. Her challenged actions were "in furtherance of" the "right of petition." (§ 425.16, subd. (b)(1).)

The *Thayer* case, which the trial court apparently did not consider, demonstrates this point. Thayer and his spouse were potential beneficiaries of a class action prosecuted by the Kabateck law firm. Thayer wanted more money from the settlement than Kabateck's allocation proposed. Thayer sued, accusing Kabateck of mismanaging the settlement. Kabateck filed an anti-SLAPP motion against Thayer's attack on Kabateck's litigation conduct. Kabateck's anti-SLAPP motion had merit. (*Thayer, supra*, 207 Cal.App.4th. at p. 154.)

The *Thayer* decision observed "[n]umerous cases have held that the SLAPP statute protects lawyers sued for litigation-related speech and activity. [Citations.] Put otherwise, legal advice and settlement made in connection with litigation are within section 425.16, and may protect defendant attorneys from suits brought by third parties on any legal theory or cause of action 'arising from' those protected activities. . . . [The anti-SLAPP statute's protection] includes communicative conduct such as the filing, funding, and prosecution of a civil action. [Citation.] This includes qualifying acts committed by attorneys in representing clients in litigation." (*Thayer, supra*, 207 Cal.App.4th at p. 154.)

We agree wholeheartedly with *Thayer*.

8

A dangerously effective way to chill people's exercise of their right to petition the government is to burden their lawyer with a lawsuit based on that lawyer's services to the petitioner.

If you want to petition the government successfully, a lawyer helps. Using litigation to scare off or punish that lawyer can deter the petitioning right. This terrain is within the heartland of the anti-SLAPP statute.

*Thayer* applies here. Ramirez sued McCormack for engaging in "litigation-related speech and activity." (*Thayer, supra*, 207 Cal.App.4th. at p. 154.)

The anti-SLAPP statute covered McCormack's actions. Ramirez had no relation to McCormack apart from McCormack's status as attorney for Ramirez's litigation opponent. McCormack was helping her clients petition the courts. Ramirez did not like that. Ramirez sued McCormack as opposing counsel. That attacked petitioning.

Ramirez based each of her claims on McCormack's petitioning activity. McCormack's activities included directing process servers, communicating with other counsel, negotiating and drafting a settlement agreement, drafting requests to dismiss and to seal the unlawful detainer action, and advising her clients whether and when to perform according to the terms of the settlement agreement. In short, McCormack was helping her client petition.

Therefore, this case is just like *Thayer*, despite the factual differences.

Ramirez seeks to distinguish *Thayer* by arguing her claims are based on McCormack's actions only *after* settlement had concluded all litigation activity. "There were no more petitioning rights left because all parties waived those rights through the settlement agreement … ."

9

Ramirez's response is wrong for two reasons.

First, Ramirez's complaint makes factual allegations rooted in times *before* any settlement was contemplated or achieved. With our emphasis, that complaint alleges McCormack's "intent to harm Plaintiffs in this matter started *from the beginning* of the underlying employment and unlawful detainer matter … ."

Second, even now, the litigation between Ramirez and the McCormack camp is scarcely over. This lawsuit continues it, because the essence of Ramirez's latest suit is that McCormack as opposing counsel failed properly to conclude the first litigation to Ramirez's liking. Ramirez continues to complain about the petitioning work McCormack has done for her clients.

Ramirez's effort to distinguish *Thayer* thus fails.

The *Applied* decision on which Ramirez relies is inapplicable. No one in *Applied* was petitioning the government. No one in *Applied* was a defendant lawyer. Rather, the defendant (and anti-SLAPP movant) in *Applied* was Pacific Mortgage Exchange, which allegedly breached a settlement agreement by refusing to supply a proper business certification and by continuing to use software it had promised to abandon. These actions did not constitute "petitioning" the government. Therefore the anti-SLAPP statute was not pertinent. (*Applied, supra,* 164 Cal.App.4th at p. 1117.)

*Thayer* distinguished *Applied* on precisely this basis. (See *Thayer, supra,* 207 Cal.App.4th at p. 157.)

Ramirez cites other cases that are further afield. They are not salient.

McCormack's motion thus satisfied prong one because Ramirez's lawsuit attacked McCormack's efforts to help her clients petition the courts.

10

## C

McCormack prevails on prong two because Ramirez has forfeited her opportunity to argue this appellate issue. She tells us she "will not discuss" this point but requests leave to file supplemental briefing if we are "inclined to move to the second prong." McCormack offers no authority for piecemeal briefing, which is time-consuming and expensive. Standard practice is to the contrary. (E.g., *Thayer, supra,* 207 Cal.App.4th at p. 144.)

## DISPOSITION

We reverse the order and award costs to the appellants. We remand with directions to enter an order granting the motion and to determine the fees and costs respondents must pay.

WILEY, J.

We concur:

STRATTON, P. J.

RUBIN, J*

---

* Retired Presiding Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.