Filed 11/30/20  Minkovitch v. Mansouri CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| YAN MINKOVITCH, | B299820 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19STCV06902) |
| v. | |
| PEDRAM MANSOURI et al., | |
| Defendants and Respondents. | |


APPEAL from an order of the Superior Court of Los Angeles County.  Gregory Keosian, Judge.  Affirmed.

Yan Minkovitch, in pro. per., for Plaintiff and Appellant.

Kaufman Dolowich & Voluck, Barry Z. Brodsky and Jodi L. Girten for Defendants and Respondents.

_____

Yan Minkovitch appeals from the trial court's order granting a motion to strike under Code of Civil Procedure section 425.16, the anti-SLAPP statute.[1]  Respondents Pedram Mansouri, Christine Otero and The Mansouri Law Offices (collectively Respondents) were the lawyers for Minkovitch's ex-wife in their marital dissolution proceedings.  Minkovitch claims that during those proceedings:  (1) Mansouri physically assaulted him with rolled-up motion papers; (2) the Mansouri firm made false allegations against him in a contempt proceeding; (3) Mansouri threatened him in an email; and (4) Mansouri falsely reported Minkovitch's child support obligations to the Department of Child Support Services.  The trial court struck all but the first category of claims under section 425.16.

We affirm.  The claims that the trial court struck all arise out of protected litigation and other protected petitioning conduct.  Except for Minkovitch's cause of action for malicious prosecution, each of those claims is also barred by the litigation privilege.  And the malicious prosecution claim could not have succeeded because such a claim cannot be predicated on unsuccessful motions in a marital dissolution action.

---

[1] Subsequent undesignated statutory references are to the Code of Civil Procedure.  "SLAPP" is an acronym for "[s]trategic lawsuit against public participation."  (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1109, fn. 1.)

## BACKGROUND

### 1. The Dissolution Action

Respondents represent Minkovitch's ex-wife, Lina, in the former couple's dissolution action (Dissolution Action).[2]

On January 11, 2018, Respondents filed an Order to Show Cause re Contempt in the Dissolution Action (Contempt OSC). The Contempt OSC claimed that Minkovitch had failed to pay 14 months of court-ordered spousal support and child support for the couple's two children, resulting in payment arrears of $15,266.

Pursuant to a court order, Lina had previously received $13,000 in child and spousal support payments from an escrow account containing funds from the sale of the couple's house. The court had authorized the use of such funds for support payments when Minkovitch was more than 5 days late in paying support. Lina claimed that the house had been her separate property and that the funds in the escrow account therefore belonged to her rather than to Minkovitch.

The Dissolution Action was tried in November and December 2018. After trial, the court ruled that the couple's house had in fact been Lina's separate property. The court found that the support payments that Lina received from the escrow account were therefore from her separate property, and gave Minkovitch no credit toward his outstanding support obligations from those payments.

The court found that Minkovitch had paid nothing in spousal support and only $550 in child support between March 6, 2016, and November 14, 2018. The court consequently found that

---

[2] For clarity, we refer to Lina Minkovitch using her first name. No disrespect is intended.

Minkovitch owed Lina a total of $20,638 in child and spousal support arrears, which the court ordered him to pay at a rate of $500 per month.

The court ordered future child support payments by Minkovitch in the amount of $131 per month. However, the court concluded that the "parties have the same or similar net spendable incomes," and therefore did not award any ongoing spousal support.

On the morning of December 20, 2018, the day after trial had concluded, Minkovitch sent Mansouri an e-mail informing him that Minkovitch intended to file a lawsuit against Mansouri and his firm and demanding that Mansouri preserve relevant documents. Minkovitch's e-mail said that the lawsuit would include claims for breach of fiduciary duty, fraud, embezzlement, theft, malpractice, perjury, malicious prosecution, intentional inflicting of emotional distress, and "other claims."

Mansouri responded with the following e-mail (the December 20 email):

"Hi Yan- [¶] I'm confused. Weren't you celebrating outside the courtroom yesterday? I thought you won a big victory yesterday? What happened? You seem disregulated this morning (I know that's a tough word for you – look it up). Did you wake up this morning and reality hit you like a ton of bricks? [¶] Lina and I also want to thank you for producing all of the evidence that carried the day for us. We could not have done it without the profit and loss you created or even the deeds and the loan applications that we did not have until you produced them! Not to mention your unbelievable testimony! You were our star witness. You literally would have won if you didn't do anything. Lol. [¶] Btw we are now in the process of having DCSS revoke

your agent and loan broker license, as well as your passport and drivers license due to your arrears.  Once you lose Your license you will then lose custody because you can't drive the girls anywhere.  [¶]  Also, you contact me again or come to my office I will call the police and/or get a restraining order.  [¶]  Govern yourself accordingly.  [¶]  Pedram."

The trial court entered judgment in the Dissolution Action on April 2, 2019.

## 2.    Minkovitch's Complaint

Minkovitch filed his complaint in this action on March 1, 2019.  The complaint's first two causes of action—for assault and battery and intentional infliction of emotional distress—are based on an alleged incident that occurred in court on November 13, 2018.  Minkovitch claimed that, after checking in with the court clerk, Mansouri "approached the plaintiff and rolled up Plaintiff's motion and Mr. Mansouri's responsive declaration and hit plaintiff across the face."

The complaint's third, fourth, fifth, and sixth causes of action were for malicious prosecution, abuse of process, intentional infliction of emotional distress, and defamation, respectively.  Each of these causes of action was based on the Contempt OSC, which Minkovitch alleged was "false."  The complaint alleged that Mansouri had falsely claimed in the Contempt OSC that "he did not receive any support payment" even though Mansouri had actually received spousal and child support payments on behalf of Lina from the escrow fund.  The complaint alleged that, after the hearing on the Contempt OSC, "the case was dismissed."

The complaint's seventh, eighth, and ninth causes of action—for civil harassment, intentional infliction of emotional

5

distress, and abuse of process—were based upon Mansouri's December 20 e-mail. Minkovitch alleged that, after trial, Mansouri started threatening Minkovitch with "physical harm," and that Mansouri's "verbal threats continued via email." The complaint cited Mansouri's statement in the December 20 e-mail that he was "in the process" of reporting Minkovitch to the "department of children services," to "get plaintiff's license and children taken away." Minkovitch alleged that Mansouri "fulfilled his threats by giving [the] department of children services the wrong information where they then implemented the wrong wage garnishment order."

### 3. The Anti-SLAPP Motion

Respondents filed an anti-SLAPP motion, seeking to strike Minkovitch's entire complaint. Respondents argued that each of Minkovitch's claims arose from conduct that is protected under section 425.16, subdivision (e), because those claims concerned Respondents' "role as counsel for Lisa . . . and would have no basis in the absence of their protected activities in that role."

Respondents supported the motion with declarations from Mansouri and Otero. Otero's declaration explained the circumstances and proceedings surrounding the Contempt OSC. Mansouri's declaration responded to Minkovitch's allegations concerning the November 13, 2018 incident in court and the December 20 e-mail.

Mansouri denied ever physically striking Minkovitch or "physically or verbally" threatening him. Mansouri stated that, while in court on November 13, 2018, he tried to locate Minkovitch's counsel. He did not see her, but he did see Minkovitch. Mansouri attempted to hand Minkovitch the opposition papers to an ex parte application that Minkovitch had

6

filed, but Minkovitch refused to take the papers. Mansouri said that he therefore "lightly tossed the papers on [Minkovitch's] lap and walked away."

Mansouri acknowledged stating in his December 20 e-mail that his client would seek enforcement of the court-ordered child support, "which could include a revocation of [Minkovitch's] driver's license and real estate license by the Department of Child Support Services [DCSS]." However, Mansouri testified that he "had no involvement in any actions or inactions that might or were taken by the DCSS to enforce the child support order."

Minkovitch opposed the anti-SLAPP motion and filed his own declaration in support of his opposition.[3]

The trial court granted the motion in part and denied it in part. The trial court denied the motion with respect to Minkovitch's claims concerning the alleged assault in court, finding that the claims did not arise from protected litigation activity. The court concluded that "striking someone with rolled up papers is not litigation-related activities under the anti-SLAPP statute," and the fact that the incident occurred in a courthouse was merely incidental.[4]

However, the trial court granted the motion with respect to Minkovitch's remaining claims. The court found that the

---

[3] Although the trial court's order refers to Minkovitch's declaration, Minkovitch did not include a copy of the declaration in the appellate record.

[4] Respondents did not appeal from this portion of the trial court's ruling, and Minkovitch's first and second causes of action are therefore not at issue in this appeal. We refer to Minkovitch's remaining claims as the "Appealed Claims."

Contempt OSC and the December 20 e-mail were both protected litigation communications.  The court concluded that the December 20 e-mail "concerns the subject matter of the litigation and informs Minkovitch of Mansouri's next steps in the litigation, which Minkovitch alleges he 'fulfilled' by obtaining a wage garnishment order."

With respect to the merits of Minkovitch's Appealed Claims, the court found that each of those claims except for Minkovitch's third cause of action for malicious prosecution was barred by the litigation privilege established by Civil Code section 47, subdivision (b).  Quoting *Bidna v. Rosen* (1993) 19 Cal.App.4th 27, 37 (*Bidna*), the court concluded that Minkovitch also could not prevail on his malicious prosecution cause of action because " 'no malicious prosecution action may arise out of unsuccessful family law motions or OSC's.' "

## DISCUSSION

### 1.    The Anti-SLAPP Procedure

Section 425.16 provides for a "special motion to strike" when a plaintiff asserts claims against a person "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).)  Such claims must be stricken "unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (*Ibid*.)

Thus, ruling on an anti-SLAPP motion involves a two-step procedure.  First, the "moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them."  (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396 (*Baral*).)  At this stage, the defendant must make a

8

"threshold showing" that the challenged claims arise from protected activity.  (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 (*Rusheen*).)  "A claim arises from protected activity when that activity underlies or forms the basis for the claim."  (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062 (*Park*).)

Second, if the defendant makes such a showing, the "burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated."  (*Baral, supra,* 1 Cal.5th at p. 396.)  Without resolving evidentiary conflicts, the court determines "whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment."  (*Ibid.*)  The plaintiff's showing must be based upon admissible evidence.  (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212.)

Section 425.16, subdivision (e) defines the categories of acts that are in " 'furtherance of a person's right of petition or free speech.' "  Those categories include "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law," and "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law."  (§ 425.16, subd. (e)(1)–(2).)

An appellate court reviews the grant or denial of an anti-SLAPP motion under the de novo standard.  (*Park, supra,* 2 Cal.5th at p. 1067.)

9

## 2. Minkovitch's Appealed Claims All Arise From Protected Conduct

The trial court correctly concluded that Minkovitch's Appealed Claims all arise from protected petitioning conduct. Those claims are based upon statements that were either made in the course of litigation or in connection with official proceedings by a government agency.

Minkovitch's third through sixth causes of action all arise from Respondents' filing and prosecution of the Contempt OSC. Regardless of how it is labeled, each of these causes of action is based upon Respondents' alleged false statements in the Contempt OSC. (See *Navellier v. Sletten* (2002) 29 Cal.4th 82, 92 ["The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability"].)[5] Pleadings filed in litigation are a paradigmatic example of protected petitioning conduct. (See *Rusheen, supra,* 37 Cal.4th at p. 1056 [an act in furtherance of the right to petition under section 425.16 "includes communicative conduct such as the filing, funding, and prosecution of a civil action"].)

Minkovitch's seventh, eighth, and ninth causes of action also arise from litigation conduct. Each of those causes of action is based upon Mansouri's statements in the December 20 e-mail. As the trial court correctly observed, the contents of the e-mail

___

[5] No exception exists under the anti-SLAPP statute for actions for malicious prosecution or for abuse of process. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734–735; *Rusheen, supra,* 37 Cal.4th at p. 1065.)

concern prior court proceedings and Mansouri's intended next steps on behalf of his client.

Like pleadings, communications by counsel concerning ongoing litigation are protected petitioning conduct. " 'Under the plain language of section 425.16, subdivision (e)(1) and (2), as well as the case law interpreting those provisions, all communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected as petitioning activity by the anti-SLAPP statute.' " (*Contreras v. Dowling* (2016) 5 Cal.App.5th 394, 408–409 [attorney's letter to opposing counsel was "unquestionably protected activity"], quoting *Cabral v. Martins* (2009) 177 Cal.App.4th 471, 479–480; see *Rusheen, supra,* 37 Cal.4th at p. 1056 [protected conduct "includes qualifying acts committed by attorneys in representing clients in litigation"].)[6]

---

[6] Minkovitch's complaint contains a vague allegation that Mansouri "started threatening" him with "physical harm." However, the complaint does not contain any specific allegation of a threat other than the December 20 e-mail. The appellate record also does not contain any *evidence* of physical threats. The trial court stated in its ruling that it "cannot locate the alleged physical threat that Minkovitch refers to in his Complaint." Because Minkovitch did not include his declaration opposing the anti-SLAPP motion in the appellate record, we must presume that the trial court was correct in this characterization of the evidence. (See *In re Kathy P.* (1979) 25 Cal.3d 91, 102 [appellant has the "burden of showing error by an adequate record"].) Thus, there is nothing in the record to support a conclusion that Mansouri allegedly made threats outside the context of litigation.

Minkovitch's claim that Mansouri gave false information to DCSS also arises from protected litigation conduct. Mansouri allegedly gave DCSS information about Minkovitch's child support obligations as determined by the court in the Dissolution Action. Minkovitch's claim therefore challenged statements made "in connection with" the issues in that action. (See *Kenne v. Stennis* (2014) 230 Cal.App.4th 953, 967 (*Kenne*) [allegedly false police reports "dealt with efforts at service of papers in an existing litigation and thus were 'made in connection with an issue under consideration or review by a . . . judicial body' "], quoting § 425.16, subd. (e)(2).)

Mansouri also made his challenged statements in anticipation of official proceedings by DCSS. "Communications that are preparatory to or in anticipation of commencing official proceedings come within the protection of the anti-SLAPP statute." (*Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, 1569–1570 (*Siam*) [reports of child abuse to mandatory reporters were protected under section 425.16, as they were "designed to prompt action by law enforcement or child welfare agencies"].)

Minkovitch argues that his Appealed Claims did not arise from conduct that is protected under section 425.16 because Respondents' challenged conduct was not actually "in furtherance" of any constitutional rights. (§ 425.16, subd. (b)(1).) Minkovitch claims that Respondents' challenged statements were not "valid" exercises of any constitutional right because they were false and unlawful and were intended to intimidate rather than further any legitimate purpose.

Minkovitch's argument confuses the first and second step of the anti-SLAPP analysis. To show that a claim arises from protected conduct under the first step of the anti-SLAPP

procedure, a defendant need not prove that his or her conduct involved the *valid* exercise of a constitutional right. "That the Legislature expressed a concern in the statute's preamble with lawsuits that chill valid exercise of First Amendment rights does not mean that a court may read a separate proof-of-validity requirement into the operative sections of the statute. [Citations.] Rather, any 'claimed illegitimacy of the defendant's acts is an issue which the plaintiff must raise *and* support in the context of the discharge of the plaintiff's [secondary] burden to provide a prima facie showing of the merits of the plaintiff's case.' " (*Navellier v. Sletten*, *supra*, 29 Cal.4th at p. 94, quoting *Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1367.)

Our Supreme Court has recognized an exception to this rule when "either the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law." (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 320 (*Flatley*).) However, in *Flatley* the court emphasized that a plaintiff's mere *allegation* of illegality is not sufficient to preclude a defendant from showing that his or her challenged conduct is protected under section 425.16: "If, however, a factual dispute exists about the legitimacy of the defendant's conduct, it cannot be resolved within the first step [of the anti-SLAPP procedure] but must be raised by the plaintiff in connection with the plaintiff's burden to show a probability of prevailing on the merits." (*Id.* at p. 316; see *Birkner v. Lam* (2007) 156 Cal.App.4th 275, 285 [" '[C]onduct that would otherwise come within the scope of the anti-SLAPP statute does not lose its coverage . . . simply because it is *alleged* to have been unlawful or unethical' "], quoting *Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 910–911.)

Thus, where the alleged illegality of the defendant's conduct is disputed, claims that the defendant made false statements in litigation or to government agencies in connection with official proceedings will support an anti-SLAPP motion. (See *Suarez v. Trigg Laboratories, Inc.* (2016) 3 Cal.App.5th 118, 123 [protection under section 425.16 applied "even against allegations of fraudulent promises made during the settlement process"]; *Kenne, supra,* 230 Cal.App.4th at pp. 966–967 [alleged false police report was within the scope of the anti-SLAPP statute where defendants denied that the report was false or illegal].)

Respondents did not concede that they engaged in any unlawful conduct. They also submitted evidence that, at a minimum, created factual disputes as to whether they had made any false statements. The exception under *Flatley* for conduct that is illegal as a matter of law therefore does not apply here.

3. **Minkovitch Failed to Show a Probability of Success on His Appealed Claims**

a. *The litigation privilege bars Minkovitch's fourth through ninth causes of action*

The trial court correctly found that the litigation privilege precludes each of Minkovitch's Appealed Claims except for his third cause of action for malicious prosecution. "Pursuant to [Civil Code] section 47[, subdivision] (b), the [litigation] privilege bars a civil action for damages for communications made '[i]n any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to [statutes governing writs of mandate],' with certain statutory exceptions . . . . The privilege established by this subdivision often is referred to as an 'absolute' privilege, and it

14

bars all tort causes of action except a claim for malicious prosecution." (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 360 (*Hagberg*), quoting Civ. Code, § 47, subd. (b).)

The litigation privilege applies to communications that further the objects of litigation, even if those communications include false claims or perjurious evidence. (*Hagberg, supra,* 32 Cal.4th at p. 361; *Rusheen, supra,* 37 Cal.4th at p. 1058.) The privilege also protects communications " 'to or from governmental officials which may precede the initiation of formal proceedings.' " (*Hagberg,* at p. 362, quoting *Slaughter v. Friedman* (1982) 32 Cal.3d 149, 156, italics omitted.)

The litigation privilege therefore clearly applies to Minkovitch's claims relating to the Contempt OSC (other than his cause of action for malicious prosecution). Those claims are based upon pleadings filed during the Dissolution Action.

The privilege also applies to the statements in Mansouri's December 20 e-mail. That e-mail directly related to issues in the Dissolution Action and concerned Respondents' next steps with respect to those issues. (See *Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 [the litigation privilege applies to "any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved"].)

Minkovitch cites *Siam* in support of an argument that the privilege did not protect Mansouri's allegedly false statements to DCSS. That decision does not apply here. The court in that case concluded that the privilege under Civil Code section 47, subdivision (b) did not protect the defendant's alleged knowingly false report of child abuse to police and to mandated reporters of

such abuse. (*Siam, supra,* 130 Cal.App.4th at pp. 1567–1568, 1577.) The court relied on Penal Code section 11172, subdivision (a), which expressly permits damage claims against voluntary reporters who knowingly or recklessly make false reports of child abuse to the authorities. Agreeing with a prior decision, the court concluded that this specific statute overrides the litigation privilege with respect to the particular communications that the statute makes actionable. (*Siam*, at p. 1577, citing *Begier v. Strom* (1996) 46 Cal.App.4th 877, 885.)

Penal Code section 11172 thus falls within the category of statutes whose provisions permitting a specific legal remedy (such as criminal sanctions for perjury and filing a false police report) prevail over the general privilege in Civil Code section 47. (See *Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1246 [the court's recognition of crimes constituting exceptions to the litigation privilege "has been guided by the 'rule of statutory construction that particular provisions will prevail over general provisions' "].) Minkovitch does not cite any statute permitting a claim for damages for false statements to the DCSS concerning child support obligations. The exception to the litigation privilege recognized in *Siam* therefore does not apply to Mansouri's alleged statements to DCSS. (See *Kenne, supra,* 230 Cal.App.4th at p. 972 [the holding in *Siam* did not apply to the defendant's alleged conduct in making false police reports because Penal Code section 11172, subdivision (a) did not apply to such reports].)

16

**b.** ***Minkovitch could not prevail on his third cause of action for malicious prosecution because such actions may not be based on family law proceedings***

The court in *Bidna* recognized a "bright line" rule barring any claim for malicious prosecution based upon unsuccessful motions or OSC's in family law proceedings. (*Bidna, supra,* 19 Cal.App.4th at pp. 29–30, 37.) The court concluded that such a rule is justified because of (1) the "unique propensity for bitterness" in family law litigation; (2) the sanctions available in such litigation to deter improper litigation conduct; and (3) the need for sensitivity and flexibility in imposing family law remedies. (*Id.* at p. 35.)

Minkovitch acknowledges this holding but argues that it does not apply to contempt proceedings. Minkovitch cites the fact that the contempt remedy is governed by the Code of Civil Procedure rather than the Family Code. We reject the argument.

The source of the authority for a contempt remedy is immaterial. The pertinent fact is that the remedy is sought in a family law proceeding. A motion or OSC seeking a contempt order in a family law case, like other types of remedies sought in such a case, is subject to the concerns the court identified in *Bidna.* Family law actions may include remedies that are also available outside the family law context. (See *L.G. v. M.B.* (2018) 25 Cal.App.5th 211, 224.) But it is the family law context, not the statutory source of the remedy, that is the important factor.

The court in *Bidna* clearly intended to include contempt motions within the scope of the bright line rule that it created. The court cited with approval several prior decisions revealing an "abiding judicial reluctance to entertain malicious prosecution

17

actions which arise either out of motions or OSC's, or originate in family law proceedings," including contempt motions. (See *Bidna, supra,* 19 Cal.App.4th at pp. 32–34, citing *Twyford v. Twyford* (1976) 63 Cal.App.3d 916; *Chauncey v. Niems* (1986) 182 Cal.App.3d 967; *Green v. Uccelli* (1989) 207 Cal.App.3d 1112.)

We also conclude that a malicious prosecution action may not be predicated on an unsuccessful OSC re contempt in a family law action. Minkovitch therefore could not show a probability of success on his third cause of action for malicious prosecution.

## DISPOSITION

The trial court's order is affirmed. Respondents are entitled to their costs on appeal.

NOT TO BE PUBLISHED.

LUI, P. J.

We concur:

ASHMANN-GERST, J.

CHAVEZ, J.