Filed 11/17/21  Haida Group v. Regency Centers CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| HAIDA GROUP LLC,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>REGENCY CENTERS, L.P.,<br><br>    Defendant and Appellant. | D078662<br><br><br>(Super. Ct. No. 37-2020-00027032-CU-BC-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Reversed.

Hodel Wilks, Matthew A. Hodel and Frederick L. Wilks for Defendant and Appellant.

Sarkissian Law Group, Areg A. Sarkissian and Konstantinos Zinas for Plaintiff and Respondent.

We decide this appeal from the denial of an "anti-SLAPP" motion (Code Civ. Proc., § 425.16) by applying the well-settled rule that a plaintiff may not avoid a special motion to strike through artful pleading.[1]  Plaintiff Haida Group LLC (Haida) admitted in its opposition brief to the anti-SLAPP motion filed by defendant Regency Centers, L.P. (Regency) that its claims against Regency rest on Regency's failure to name and serve it as a party in the underlying unlawful detainer proceeding.  The trial court nonetheless denied Regency's motion, crediting vague allegations in the complaint to conclude that Haida's claims rested on Regency's failures to provide proper notice under a contract or statute.

On appeal, we agree with Regency that Haida's causes of action against it target protected petitioning activity and lack minimal merit.  As Haida's own briefs explain, the claims rest on Regency filing an unlawful detainer complaint that did not name Haida as a defendant, but nonetheless serving process on Haida as an unnamed occupant rather than as a party.  This conduct by Regency plainly amounts to protected petitioning activity (§ 425.16, subd. (e)(1)–(2)), and the litigation privilege prevents Haida from establishing the minimal merit required to proceed.  Therefore, the anti-SLAPP motion should have been granted, and the claims against Regency should have been stricken.

FACTUAL AND PROCEDURAL BACKGROUND

---

[1]     Further undesignated statutory references are to the Code of Civil Procedure.  The "anti-SLAPP" statute, section 425.16, provides a procedure for litigants seeking to strike at an early stage of proceedings strategic lawsuits against public participation, or SLAPP suits.

A.    *Background*

Commercial landlord Regency owns a shopping center located on Pomerado Road in Poway. In 2016, it leased the property to Whole-Mart Grocery, LLC (Whole-Mart) to operate an international market offering groceries, dining options, a pharmacy, and bakery. The lease authorized Whole-Mart to sublease parts of the premises to create "up to four food stations for Asian food/sushi, Indian food, Italian food/pizza and Mediterranean/Persian food."

In February 2020, Regency commenced unlawful detainer proceedings against Whole-Mart and its pharmacy sublessee, Poway Pharmacy LLC. Other potential occupants in the building were not named in the complaint but received notice of the unlawful detainer action pursuant to section 415.46 (discussed *post*). Haida, which ran a pizza and sandwich shop in Whole-Mart's food court, was among those so notified. The court ultimately issued a judgment in Regency's favor that bound Whole-Mart, Poway Pharmacy, and all unnamed building occupants. This precipitated Haida's lawsuit against Whole-Mart and Regency for failing to provide proper notice before shutting down the market.

B.    *Haida's Lawsuit*

Food vendor Haida signed a two-year rental agreement with Whole-Mart in 2018.[2] For a monthly fee of $4,000, Haida was permitted to use a designated area within the market to sell sandwiches and pizza. The rental

_____

[2]    Haida alleged in its complaint that it signed a sublease with Whole-Market. But a legible copy of the agreement, incorporated by reference in the complaint, reflects that Whole-Market agreed to provide a *license* to Haida to use the space for approved food vending purposes. To avoid confusion, we refer to the arrangement simply as a rental agreement.

period ran through December 2020 and included a three-year option to renew.

Haida knew Whole-Mart was renting the premises from Regency and believed Whole-Mart was meeting its rent obligations under the master lease. But in February 2020, Regency informed Haida that Whole-Mart was months behind on rent and subject to an unlawful detainer action. Haida nevertheless continued to pay rent to Whole-Mart until July 2020 when, following an unlawful detainer judgment against Whole-Mart, Regency closed the market, preventing Haida from continuing its operations.

On August 3, 2020, Haida sued Whole-Mart and Regency for constructive eviction and negligence, alleging defendants had provided insufficient notice before closing the premises. According to Haida, Regency had contractual and common law duties to notify its tenants of a planned closure and by breaching these duties, deprived Haida of quiet possession. By closing the market before Haida's rental term ended, Haida alleged months of lost income, a lost renewal opportunity, and forfeited equipment.[3]

C. *Regency's Anti-SLAPP Motion*

Regency filed a special motion to strike, claiming the two causes of action against it arose entirely from protected petitioning activity in prosecuting the unlawful detainer lawsuit. Laura Borenstein-Hofman, Regency's property manager, submitted a declaration describing the master lease. She explained that while Regency was aware of a formal sublease between Whole-Mart and Poway Pharmacy, it was unaware of any other sublease or license agreements by Whole-Mart. Regency knew Whole-Mart operated a food court but "had no knowledge whether the food stands were

_____

[3]     Haida's breach of contract cause of action, asserted solely against Whole-Mart, is not relevant to this appeal.

4

operated by Whole-Mart itself (by its own employees as part of its grocery store operations) or by separate business entities or sole proprietors." There was no agreement between Regency and Haida, and until Haida sued it, Regency was unaware of any relationship between Whole-Mart and Haida. The only communication at any point in time between Regency and Haida occurred in the context of the unlawful detainer action.

Regency's attorney Frederick Wilks submitted another supporting declaration describing the underlying unlawful detainer case. With Whole-Mart falling $863,124 behind in rent, Regency brought an unlawful detainer action against Whole-Mart, Poway Pharmacy, and Doe defendants in February 2020. (*Regency Centers L.P. v. Whole-Mart Grocery, LLC, et al.* (Super. Ct. San Diego County, 2020, No. 37-2020-00008528-CU-UD-CTL).) Regency did not name any food vendors as defendants because it "had no knowledge whether any of them were separate businesses, or merely operated by Whole-Mart's employees as part of its grocery store operations." To account for the possibility that some of the food vendors *were* separate business entities, Regency sent a process server to the premises to serve a "prejudgment claim of right to possession" under section 415.46.[4] The printed judicial council form (CP10.5) notified potential occupants that if their names did not appear in the attached summons and complaint, they

[4]     Section 415.46 provides a procedure to notify unnamed potential occupants of eviction proceedings. Once served under section 415.46 with a notice of prejudgment claim of right to possession and a copy of the unlawful detainer complaint and summons, the burden shifts to the unnamed occupant to file a prejudgment claim of right and ask the court to join it as a defendant in the pending unlawful detainer action. Failure to do so could result in eviction without further hearing. Upon service under section 415.46, "no occupant of the premises, whether or not that occupant is named in the judgment for possession, may object to the enforcement of that judgment as prescribed in Section 1174.3." (§ 415.46, subd. (e)(1).)

had 10 days to file a claim of right to possession to be added by the court as a defendant to the unlawful detainer action. The form indicated that a failure to respond could result in eviction of all occupants without further hearing. Copies of the complaint and summons directed at Whole-Mart and Poway Pharmacy were attached to the notice. "Caya K[.] - Manager at Haida Pizza" accepted service. Notice was also publicly posted at the premises. Haida did not respond or file a claim of right pursuant to the procedures outlined in section 415.46.

Wilks explained that Whole-Mart admitted to owing Regency $871,243 in rent. The parties stipulated to a judgment, and Regency informed the trial court that other potential unnamed occupants had been notified of their right to make a prejudgment claim of right to possession. Accordingly, on July 22, 2020, the trial court entered a judgment of unlawful detainer in Regency's favor that applied "to all occupants of the premises including tenants, subtenants if any, and named claimants if any . . . ." The court issued a writ of possession on August 11, but no sheriff was called as Whole-Mart voluntarily turned over possession on August 15.

In its opening brief on the anti-SLAPP motion, Regency claimed that Haida's action rested entirely on Regency's litigation-related conduct, namely its "pursuit of an unlawful detainer action against defendant Whole-Mart." In its view, it had been sued "for pursuing the right to regain possession of the Premises in an unlawful detainer action," as it had "followed the statutory procedure for notifying unnamed occupants" under section 415.46. Relying on cases such as *Birkner v. Lam* (2007) 156 Cal.App.4th 275 (*Birkner*), Regency asserted that prosecuting an unlawful detainer action was protected petitioning activity, thus satisfying the first prong of the anti-SLAPP statute.

6

Addressing the second prong of the anti-SLAPP analysis, Regency contended that Haida could not show a probability of prevailing on its claims of constructive eviction and negligence. It maintained that both claims were absolutely barred by the litigation privilege. (Civ. Code, § 47, subd. (b).) The constructive eviction claim additionally failed for lack of a contractual relationship between Regency and Haida, and because Haida had no right to possession once the unlawful detainer judgment was entered. Regency likewise argued that Haida's negligence claim failed for lack of duty, breach, causation, or damages.

D.    *Haida's Opposition*

Haida substantially clarified the nature of its claims in its opposition brief. It indicated that the gravamen of its claims against Regency was not the unlawful detainer action itself, but rather Regency's failure to effect proper *service* on Haida, a known subtenant, in pursuing that action. Haida asserted that although it was served pursuant to section 415.46, "all occupants known to the landlord should be named as defendants in the complaint," and it would violate public policy to permit landlords to use section 415.46 "as a tactic to shift the burden to known occupants." Haida explained how Regency should have known about its rental agreement—the master lease with Whole-Mart authorized subleases with food-court vendors, and Regency served Haida's manager pursuant to section 415.46. In other words, Haida made clear that it challenged Regency's failure to name it as a defendant in the unlawful detainer complaint and effectuate service on Haida as a *party* pursuant to section 1164[5] rather than as a mere unnamed occupant pursuant to section 415.46. And despite receiving notice pursuant

_____

[5]    Section 1164 states that essential defendants to an unlawful detainer action are tenants and subtenants "in the actual occupation of the premises when the complaint is filed."

7

to section 415.46, Haida claimed it "had no reason to believe that Regency would shut down Haida's business operations given that Haida was still paying its rent and was not a party in the notice received by Haida in February."

Distinguishing cases cited by Regency, Haida maintained that although Regency's pursuit of the unlawful detainer action may have *triggered* its claims, it did not form the basis of those claims. In its view, it "[was] not challenging the unlawful detainer action," but rather "Regency's purposeful omission of service to Haida" in breach of its duties owed to "a valid paying tenant with a clear relationship existing between the parties."

Haida spent less time defending the challenged claims on the merits. It argued that Regency did not "properly assert what it seeks to bar" by the litigation privilege and maintained that it "[stood] by its claims and reassert[ed] that proper notice was never served." In describing the negligence claim, Haida asserted that Regency was obligated under section 1164 to name it as a party but chose instead in "bad faith" to serve notice under section 415.46. While Regency did name Doe defendants in its unlawful detainer complaint, it failed to amend the pleading once the true names were known as required under section 474. Similarly, in describing its constructive eviction claim, Haida said it surrendered possession only because of Regency's breach toward known subtenants like Haida consisting of "pursuing an action to lockout Haida without affording Haida any rights or say in the matter."

Haida offered one supporting declaration to its opposition brief. Owner Arabo Sarkesyan attached a copy of the lease between Regency and Whole-Mart and excerpted portions authorizing Whole-Mart to sublease to selected food vendors. Sarkesyan explained that Haida paid $4,000 each month

8

through March 2020 to operate its restaurant. It negotiated reduced payments of $2,000 per month thereafter due to closures associated with COVID-19. Although Sarkesyan acknowledged that Regency notified Haida about the unlawful detainer suit in February, he relied on that the fact that Haida "was not [identified as] a party in the notice" and concluded he "had no reason to believe that Regency would shut down Haida's business operations given that Haida was still paying its rent." Whatever the state of Whole-Mart's relationship with Regency, Sarkesyan thought Haida could continue its operations so long as it continued to pay monthly rent.

E.     *Reply Brief, Hearing, and Order*

Regency filed a reply brief highlighting that Haida's claims rested on Regency's alleged failure to prosecute the unlawful detainer action in a manner Haida believed was proper. In Regency's view, not only was the challenged conduct protected petitioning activity, but the claims based on it were barred by the absolute litigation privilege.

The parties appeared telephonically for a hearing before Judge Whitney on January 19, 2021, where the court issued a tentative ruling denying the motion. Apparently relying on allegations in the complaint, the tentative determined that Haida's claims challenged a breach of *contractual* duties to notify Haida that the premises would be closing, rather than any steps taken in prosecuting the unlawful detainer action itself.

Arguing against the tentative, Regency's counsel stated the only *evidence* of a contractual relationship was declaration testimony by Regency that there was none. In any event, Haida's own opposition made clear that the basis of Haida's claims was that Regency "should have served [Haida] with the summons and complaint as a defendant and . . . should have named

9

them in the complaint." Those litigation choices by Regency were inherently a part of its protected petitioning activity.

Haida's counsel offered a different view, explaining that that the claims against Regency stemmed from breach of contract. Notwithstanding Regency's assertion that there was no contract between the parties, Regency's lease with Whole-Foods authorized subleases with food vendors. Thus, there was "a constructive contract of some sort through either actual or constructive knowledge" that Whole-Market would enter subleases with vendors like Haida.

Regency's counsel replied that although the complaint alleged "a contractual obligation," the only contract attached to the pleading was between Whole-Mart and Haida. Haida produced no *evidence* to counter Regency's proffer that there was neither a contract between Regency and Haida, nor any provision in the Regency/Whole-Mart lease by which Regency assumed any contractual obligations to Haida. This was no surprise—the basis of Haida's claims against Regency was not a contractual breach, but rather (as admitted in its opposition brief) alleged procedural errors in drafting and serving the summons and complaint.

Shortly after the hearing, the court denied Regency's motion. Adopting the tentative, the court concluded that Regency failed to show that Haida's claims were *based on* (and not just triggered by) protected petitioning activity. In the court's view, the case was similar to *Copenbarger v. Morris Cerullo World Evangelism* (2013) 215 Cal.App.4th 1237 (*Copenbarger*), where a lawsuit triggered by an unlawful detainer action instead arose from the parties' respective lease obligations. The court believed Haida's claims turned on an alleged contractual obligation for Regency to notify Haida that the premises would be closing. Regency disputed that it owed a contractual

10

or other duty to provide the notice to which Haida believed it had a right. Haida's claims thus rested on purported contractual duties and duties imposed on landlords, not on Regency's litigation activity. Whether such duties existed went to the merits of Haida's claims, which was irrelevant to prong one of the anti-SLAPP inquiry.

Because the court found Regency failed to meet its threshold burden, it did not reach the prong two of the anti-SLAPP inquiry to decide whether there was a reasonable probability Haida would prevail on its constructive eviction and negligence claims against Regency. However, it noted in passing that the litigation privilege codified in Civil Code section 47, subdivision (b) would likely bar those claims on the merits. There appeared a clear logical relationship between Regency's purported failure to properly serve Haida and its litigation of the unlawful detainer action. (See *Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 (*Silberg*).)

## DISCUSSION

Regency argues the court erred in denying its anti-SLAPP motion. Based largely on admissions in Haida's own briefs, we agree. "It is settled that 'a plaintiff cannot avoid operation of the anti-SLAPP statute by attempting, through artifices of pleading, to characterize an action as a "garden variety" tort or contract claim when in fact the claim is predicated on protected speech or conduct.'" (*Contreras v. Dowling* (2016) 5 Cal.App.5th 394, 413 (*Contreras*).) Regency met its moving burden to show Haida's claims against it arise out of its protected petitioning activity in the underlying unlawful detainer action, and Haida failed to show that the litigation privilege would not bar those claims. Accordingly, the anti-SLAPP motion should have been granted.

11

A.   *Threshold Procedural Challenge*

We must at the outset address Haida's procedural challenge to Regency's anti-SLAPP motion. Regency filed its motion in October 2020, but the hearing did not take place until January 2021. Haida reasserts its argument on appeal that Regency's motion should be denied because it was not heard within the statutorily required 30 days. The trial court properly rejected this claim. Section 425.16, subdivision (f) provides that an anti-SLAPP motion "shall be scheduled by the clerk of the court for a hearing not more than 30 days after the service of the motion unless the docket conditions of the court require a later hearing." As the court reasoned, " 'the *burden is on the court clerk*, not the moving party's counsel, to explain why it is necessary to schedule a later hearing date.' " *Greka Integrated, Inc. v. Lowrey* (2005) 133 Cal.App.4th 1572, 1577–1578 is inapposite: it was based on an older version of the statute that provided no leeway for delay based on docket conditions. Moreover, Regency submitted uncontested evidence that when it asked to set the hearing in 30 days, the clerk replied that the court "simply cannot."

B.   *Anti-SLAPP Framework*

"Enacted by the Legislature in 1992, the anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884 (*Wilson*); § 425.16, subd. (a).) To achieve this goal, the statute lets a defendant file a special motion to strike claims "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States . . . or California Constitution in connection with a public issue, . . . unless the court determines that the plaintiff has established that there is

12

a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) Through this summary-judgment-like procedure, the anti-SLAPP statute aims to weed out meritless or retaliatory litigation at an early stage. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 312.)

Courts use a two-step process to resolve anti-SLAPP motions. In the first stage, the moving defendant must show the claims against it arise from the defendant's protected activity. (*Wilson, supra,* 7 Cal.5th at p. 884; *Baral v. Schnitt* (2016) 1 Cal.5th 376, 396 (*Baral*).) The anti-SLAPP statute defines four protected categories of activity. (§ 425.16, subd. (e).) If the defendant shows that the claims fall within one of them, the burden then shifts to the plaintiff to demonstrate that its claims have minimal merit. (*Wilson,* at p. 884.) At the second step, "[t]he court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment." (*Baral,* at p. 396.) If not, the court will strike the cause of action. (*Ibid.*; *Wilson,* at p. 884.) A defendant prevailing on an anti-SLAPP motion is generally entitled to recover attorney's fees and costs. (§ 425.16, subd. (c)(1).) We review the grant or denial of an anti-SLAPP motion de novo. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067 (*Park*).)

C. *Prong One: Protected Activity*

The trial court concluded that Haida's claims against Regency were based on unprotected activity not covered by the anti-SLAPP statute. Independently reviewing this question (*Wilson, supra,* 7 Cal.5th at p. 884), we reach the opposite conclusion.

As the party moving to strike, Regency bears the burden on prong one to "make two related showings." (*Wilson, supra,* 7 Cal.5th at p. 887.) First it must show that the conduct by which Haida claims injury falls within one of

13

the four categories of protected activity described in section 425.16, subdivision (e)—i.e., here, written statements made before a judicial proceeding and in connection with an issue under consideration by a judicial body. (§ 425.16, subd. (e)(1)−(2).) Second, Regency must demonstrate that Haida's claims *arise out of* that protected conduct. (See *ibid.*; *Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 620.) "A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park, supra,* 2 Cal.5th at p. 1062.)

Haida's complaint asserts that Regency breached its contractual obligations and duties as a landlord by giving Haida inadequate notice that the Whole-Mart premises would be closing before the rental term ended. In pleading "constructive eviction," Haida alleges that Whole-Mart and Regency "breached their contractual obligations to warn Plaintiff that the premises would be closing." It likewise predicates its negligence claim on Regency breaching "a duty to notify any and all of their tenants of a planned closure of the premises." What Haida *means* by these notice failures is unclear; the complaint does not identify the conduct or action by Regency giving rise to its claims.

Filling this void are Haida's own contentions. As Haida stated in its opposition brief below and in its nearly verbatim respondent's brief on appeal, its claims against Regency rest on Regency's decision to serve Haida under section 415.46 as an unnamed occupant rather than to name and serve it as a defendant in the unlawful detainer action. Haida claims this was improper because Regency knew or should have known it was Whole-Mart's sublessee. Haida does not challenge Regency's right to pursue an unlawful detainer action against Whole-Mart, but rather takes issue with its "purposeful omission of proper service to Haida." In Haida's view the service

14

it received pursuant to section 415.46 was deficient because "undoubtedly, all occupants known to the landlord should be named as defendants in the complaint."

Haida makes similar statements in detailing each cause of action against Regency. Haida asserts Regency was negligent because it breached its "duty to notify Haida and make Haida a party to the unlawful detainer action": Haida was a necessary party under section 1164 as a known subtenant of Whole-Foods. According to Haida, "Regency had a duty of care to serve Haida in accordance with the proper statues" but breached that duty when it "negligently applied the inapplicable statute," section 415.46. Similarly, Haida represents that its constructive eviction claim is based "Regency's breach of obligations toward known subtenants, such as Haida," by "pursuing an action to lockout Haida without affording Haida any rights or say in the matter."

Simply put, Haida's briefing elucidates what its complaint does not. The claims against Regency arise entirely out of Regency's litigation decision not to name Haida as a defendant in the unlawful detainer complaint and instead effect service of process on Haida pursuant to the procedure laid out in section 415.46 for unnamed occupants. Haida, in essence, alleges that Regency did not prosecute the unlawful detainer action properly. Although the trial court focused on how Haida pleaded its claims in its complaint, "the court is not limited to examining the allegations of the complaint alone but rather considers the pleadings and the factual material submitted in connection with the special motion to strike." (*Contreras, supra,* 5 Cal.App.5th at pp. 408, 413; *Navellier v. Sletten* (2002) 29 Cal.4th 82, 92 (*Navellier*) ["The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise

15

to his or her asserted liability—and whether that activity constitutes protected speech or petitioning."]; *Stewart v. Rolling Stone LLC* (2010) 181 Cal.App.4th 664, 679 [courts "do not evaluate the first prong of the anti-SLAPP test solely through the lens of a plaintiff's cause of action," but rather investigate the "acts on which the counts alleged in the complaint are based"].)  In undertaking our prong one analysis, we necessarily consider statements in Haida's own briefs clarifying the nature of its claims.  (See *Contreras,* at p. 412 [considering plaintiff's briefs and earlier pleadings to determine that her claim was based on attorney's protected activity].)

Properly construed, Haida's claims against Regency rest entirely on litigation decisions made by Regency's counsel in prosecuting Regency's unlawful detainer action against Whole-Mart.  Although Haida finds fault with what Regency's counsel *failed* to do in that proceeding, these failures are actionable in Haida's view solely because of what the attorney *did* do—that is, file a lawsuit without naming Haida as a party and serve Haida as a nonparty pursuant to section 415.46.  This is the entire basis of Haida's claims against Regency—those claims "would have no basis in the absence of" Regency's prior litigation activity.  (*Contreras, supra,* 5 Cal.App.5th at p. 412.)  As such, these claims target protected activity within the scope of the anti-SLAPP statute.  (*Id.* at pp. 412−413; § 425.16, subd. (e)(1)−(2); see *Birkner, supra,* 156 Cal.App.4th at pp. 281−282 [filing and prosecuting an unlawful detainer action "indisputably is protected activity"]; *Feldman v. 1100 Park Lane Assocs.* (2008) 160 Cal.App.4th 1467, 1480 (*Feldman*) [service of notice to quit, filling of unlawful detainer action, and threats by landlord's agent were protected]; see also *Cabral v. Martins* (2009) 177 Cal.App.4th 471, 480 (*Cabral*) ["all communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context

16

are per se protected as petitioning activity by the anti-SLAPP statute"].) Haida's assertion that Regency violated laws such as section 1164 does not change our conclusion. (See *Cabral,* at pp. 480–482 [litigation activity that allegedly violated child support evasion statutes was nonetheless protected in prong one]; *G.R. v. Intelligator* (2010) 185 Cal.App.4th 606, 612–616 [court filing that violated court rules was protected activity in prong one].)

The trial court relied on *Copenbarger, supra,* 215 Cal.App.4th 1237 to reach a different result. But *Copenbarger* merely applies the well-settled rule that where prior unlawful detainer proceedings merely precipitate rather than underlie plaintiff's suit, the action does not arise out of protected activity. (*Id.* at p. 1247.)[6] " '[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.' " (*Park, supra,* 2 Cal.5th at p. 1063.) Instead, the record must reflect—as it does here—that the action or cause of action is based on conduct by the defendant that falls into one of the categories of protected activity in section 425.16, subdivision (e). (See *Park,* at p. 1073.)

---

[6] Similar cases are legion, rejecting anti-SLAPP protection where prior unlawful detainer litigation was merely incidental to a plaintiff's claims. (See *Ulkarim v. Westfield LLC* (2014) 227 Cal.App.4th 1266, 1281–1282; *Ben-Shahar v. Pickart* (2014) 231 Cal.App.4th 1043, 1053; *Clark v. Mazgani* (2009) 170 Cal.App.4th 1281, 1286; *Oviedo v. Windsor Twelve Properties, LLC* (2012) 212 Cal.App.4th 97, 110–111; *Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC* (2007) 154 Cal.App.4th 1273, 1287.)

17

D.     *Prong Two:  Probability of Prevailing*

Because Regency met its moving burden to show that the claims against it arise from protected activity, Haida was required to demonstrate a probability of prevailing on those claims to survive a motion to strike. (§ 425.16, subd. (b).)  The trial court did not reach this question, ending its inquiry at prong one, so we address it in the first instance.  (See *Wilson, supra,* 7 Cal.5th at p. 899.)  To meet its prong two burden, Haida must establish that each cause of action it brings against Regency is legally sufficient and prima facie factually supported.  (*Navellier, supra,* 29 Cal.4th at pp. 88–89.)  "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute."  (*Navellier,* at p. 89.)

Regency maintains that Haida's claims lack even minimal merit because the litigation privilege acts as a complete bar to each of them.  "The litigation privilege is 'relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing.' "  (*Feldman, supra,* 160 Cal.App.4th at p. 1485.)  To overcome this bar, Haida must show that this privilege is inapplicable as a matter of law or make a prima facie showing of facts that, if accepted, would negate that defense.  (*Birkner, supra,* 156 Cal.App.4th at p. 285.)

"The litigation privilege, codified at Civil Code section 47, subdivision (b), provides that a 'publication or broadcast' made as part of a 'judicial proceeding' is privileged."  (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241 (*Action Apartment*).)  "The usual formulation is that the privilege applies to any communication (1) made in

18

judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action." (*Silberg, supra,* 50 Cal.3d at p. 212.)  "The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.' " (*Action Apartment*, at p. 1241.)  Where it applies, the privilege is absolute, providing a defense to all torts except malicious prosecution and applying "to all publications, irrespective of their maliciousness." (*Silberg,* at pp. 212, 215–216.)

The main purpose behind the litigation privilege is to afford litigants and witnesses the "utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." (*Silberg, supra,* 50 Cal.3d at p. 213.)  To achieve this purpose, " ' "courts have applied the litigation privilege broadly." ' " (*Feldman, supra,* 160 Cal.App.4th at p. 1485.) Its breadth " 'cannot be understated.  It immunizes defendants from virtually any tort liability (including claims for fraud) with the sole exception of causes of action for malicious prosecution. [Citation.]' [Citation]  'Any doubt about whether the privilege applies is resolved in favor of applying it.' " (*Finton Construction, Inc. v. Bidna & Keys, APLC* (2015) 238 Cal.App.4th 200, 212; see also *McNair v. City and County of San Francisco* (2016) 5 Cal.App.5th 1154, 1162 (*McNair*) [same].)

The inquiry here is straightforward.  Haida challenges its omission as a party in Regency's unlawful detainer complaint and argues it did not receive proper notice when Regency instead served it as an unnamed occupant pursuant to section 415.46.  As framed, all four requirements for the litigation privilege as laid out in *Silberg, supra,* 50 Cal.3d at page 212 are met:  (1) Haida's claims against Regency rest on communications (the

19

complaint, summons, and proof of service); (2) these communications were made in the course of unlawful detainer litigation against Whole-Mart; (3) Regency was a party to the litigation, and its pleadings and service were designed to achieve the objects of that litigation (evicting Whole-Mart for nonpayment of rent); and (4) filing those documents and deciding who to name and serve as a party clearly bore some logical relation to the prosecution of an unlawful detainer action. The litigation privilege therefore applies. (See *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1058 ["The '[p]leadings and process in a case are generally viewed as privileged communications.' "].)

In erecting an absolute defense against virtually all derivative tort liability, the litigation privilege plainly bars Haida's negligence claim against Regency. (See *Silberg, supra,* 50 Cal.3d at p. 215.) It further bars Haida's constructive eviction claim *as framed.* Haida asserts that Regency breached duties imposed on landlords by operation of law in failing to name and serve it as a party in the unlawful detainer action. These duties consist of the obligation to add necessary parties to the action under section 1164 and ensure quiet possession under Civil Code section 1927. While Haida believes Regency should have known about potential food court sublessees, it does not allege any express contractual obligation in the master lease was violated by Regency's litigation conduct. Under these circumstances, the litigation privilege properly applies to the constructive eviction claim as well. (See *McNair, supra,* 5 Cal.App.5th at pp. 1170–1171 [privilege applied to both tort and contract claims against a doctor for disclosing patient health information to the DMV: "none of the documents even potentially identified by [the patient] as part of the '[p]artly written, partly oral, and partly implied' contract in this matter can be said to 'clearly prohibit' [the doctor's] conduct

20

in this case," and his claims instead turned on whether the doctor's disclosure was justified under state or federal law].)[7]

*Feldman, supra,* 160 Cal.App.4th 1467 is instructive, applying the litigation privilege to bar tort and contract claims resting on the same underlying conduct. A landlord filed an unlawful detainer lawsuit against its tenant's sublessees, the Feldmans, for moving into a San Francisco high-rise without following proper sublet procedures. (*Id.* at p. 1475.) The Feldmans asserted several cross-claims based on the landlord serving a three-day notice to quit, filing an unlawful detainer complaint, and making statements to them over the phone regarding threatened litigation. (*Id.* at pp. 1474–1475, 1479, 1483.) The court concluded these claims were all barred by the litigation privilege because they rested on communications that were logically related to the unlawful detainer action and made to further the objectives of that litigation. (*Id.* at pp. 1486–1491, 1494.) However the claims were labeled, the Feldmans' cross-complaint alleged at its core that they were lawfully in possession as approved subtenants but that the landlord cross-defendants "harassed them with threats of eviction, initiated an unlawful detainer action, and forced them to leave." (*Ibid.*) The policy behind the litigation privilege of allowing access to the courts without fear of derivative suits therefore applied to all the Feldmans' cross claims, including their contract-based claims. We reach the same conclusion here.

Haida argues that Regency violated section 1164 by failing to name and serve it as a party. From Haida's perspective, it was improper for Regency to

---

[7]     Our conclusion should not be read to suggest that the litigation privilege bars breach of contract claims challenging litigation conduct that is alleged to violate an express contractual term. (See *Wentland v. Wass* (2005) 126 Cal.App.4th 1484, 1494 [litigation privilege did not bar cross-claim alleging that opposing party's statements in summary judgment briefing breached the parties' express confidentiality agreement].)

serve it as an unnamed occupant under section 415.46 when Regency should have known about the sublease and served Haida as a party. Even if accepted, allegations that a defendant violated a statute do not defeat application of the litigation privilege. (See, e.g., *Cabral, supra,* 177 Cal.App.4th at pp. 489–490 [litigation privilege barred claims against attorneys representing plaintiff's ex-husband in his alleged efforts to violate child support evasion statutes]; *Foothill Federal Credit Union v. Superior Court* (2007) 155 Cal.App.4th 632, 637–638, 643 [litigation privilege barred claims against credit union that allegedly produced consumer records beyond the scope of a subpoena in violation of section 1985.3].) Applying the privilege here furthers its principal purpose of ensuring free access to the courts without fear of derivative actions. (*Silberg, supra,* 50 Cal.3d at pp. 213–214.)

Our conclusion that the litigation privilege applies ends the prong two inquiry. Because the privilege absolutely bars both of Haida's claims against Regency, Haida cannot meet its burden to establish any probability of prevailing on the merits.[8] The anti-SLAPP motion should have been granted, and the causes of action against Regency stricken. As the prevailing party, Regency is entitled to an award of attorney's fees, including fees incurred in connection with this appeal. (§ 425.16, subd. (c)(1); *Contreras, supra,* 5 Cal.App.5th at p. 421.)

---

[8] Indeed, Haida makes no substantive argument to the contrary. It punts on the issue, faulting Regency for failing to "properly assert what it seeks to bar using the litigation privilege" and stating simply that it "stands by its claims and reasserts that proper notice was never served."

## DISPOSITION

The order denying Regency's anti-SLAPP motion is reversed; the court is directed to enter a new order granting the motion and striking the causes of action brought against Regency.  The court shall also award Regency attorney's fees as the prevailing party, including fees incurred in connection with this appeal.

Regency is entitled to costs on appeal.


DATO, J.

WE CONCUR:


HALLER, Acting P. J.


AARON, J.

23